**Darryl McGORE, Plaintiff–Appellant,**

v.

**Gene L. WRIGGLESWORTH, Chief Sheriff; Richard Chinelli, Administrator; Ingham County Sheriff's Department, Defendants–Appellees.**

**No. 97–1165.**

United States Court of Appeals, Sixth Circuit.

Decided June 11, 1997.

Darryl McGore (briefed), East Lake, MI, for Plaintiff–Appellant.

Before: MARTIN, Chief Judge; NORRIS and DAUGHTREY, Circuit Judges.

## OPINION

BOYCE F. MARTIN, Jr., Chief Judge.

"In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night." *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 602, 100 S.Ct. 1889, 1902, 64 L.Ed.2d 525 (1980) (Rehnquist, J., dissenting); *see also United States v. Gonzales,* —— U.S. ——, —— n. 2, 117 S.Ct. 1032, 1039 n. 2, 137 L.Ed.2d 132 (1997) (Stevens, J., dissenting). When Congress penned the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, §§ 801–10, 110 Stat. 1321 (Prison Litigation Act), the watchdog must have been dead. The statute contains typographical errors, *see Floyd v. United States Postal Serv.,* 105 F.3d 274, 276 (6th Cir.1997); creates conflicts with the Rules of Appellate Procedure, *id.* at 277; and is internally inconsistent, *compare* 28 U.S.C. § 1915(f)(2)(B), *with* 28 U.S.C. § 1915(a)(2), *and* 28 U.S.C. § 1915(b)(2). Moreover, the year in its name, 1995, does not correspond to the date of its enactment, 1996. We have even issued an unprecedented administrative order, *see In re Prison Litigation Reform Act,* 105 F.3d 1131 (6th Cir.1997), in an attempt to organize the chaos. Now, over a year after the statute was signed into law, we are provided the opportunity to engage in a comprehensive analysis of the statute.

## I. FACTS

Darryl McGore, a Michigan prisoner, sued the Ingham County Michigan Sheriff's Department, its Chief, Gene Wrigglesworth, and Richard Chinelli, a staff administrator, in their individual and official capacities pursuant to 42 U.S.C. § 1983. McGore alleged that he sued the Director of the Michigan Department of Corrections in the Ingham County Circuit Court. At an unspecified date, McGore requested that the sheriff's department serve the summons. According to McGore, on May 25, 1996, he received a $14.60 invoice from the sheriff. Chinelli reportedly informed McGore that the sheriff

was not obligated to serve the summons. It appears that McGore did not pay the requested $14.60. McGore filed this civil rights action seeking monetary and injunctive relief.

The district court summarily dismissed the action under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The district court also certified that any appeal would not be taken in good faith under 28 U.S.C. § 1915(a)(3) and that the case satisfied the provisions of 28 U.S.C. § 1915(g).

McGore filed a timely appeal seeking leave to proceed in forma pauperis before this court. We held McGore's pauper motion in abeyance pending briefing by the parties. The appellees have informed the court that they will not be filing a brief. McGore argues that the failure of the sheriff's department to serve the summons deprived him of access to the courts, that the defendants violated his due process rights, and that his complaint was subjected to standards too stringent for a pro se complaint.

## II. STANDARD OF REVIEW

■ We must first determine our standard of review when a district court dismisses a complaint under § 1915(e)(2) or § 1915A(b). Prior to its amendment, 28 U.S.C. § 1915(d) provided that a court might dismiss a case if the court was satisfied that the action was frivolous or malicious. In *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992), the Supreme Court found that the language of the statute indicated that frivolity was a decision entrusted to the discretion of the court entertaining the pauper petition. Therefore, Supreme Court concluded that a dismissal under § 1915(d) was reviewed under the abuse of discretion standard. *Id.* at 33–34, 112 S.Ct. at 1733–34.

In contrast, § 1915(e)(2) and § 1915A(b) do not contain discretionary language. Section 1915(e)(2) requires that a court "shall dismiss" a case if: the allegation of poverty is untrue; the case is frivolous or malicious; the case fails to state a claim on which relief may be granted; or a party seeks monetary relief against a defendant who is immune from such relief. Section 1915A(b) is essen-

tially identical to § 1915(e)(2) except that § 1915A applies only to prisoners and does not contain the provision concerning the allegation of poverty. As this court must now ascertain whether the district court properly dismissed the complaint in compliance with § 1915(e)(2) and § 1915A, we conclude that our determination involves a question of law which requires de novo review. *See United States v. Khalife*, 106 F.3d 1300, 1302 (6th Cir.1997).

We further note that a district court's dismissal of a complaint for failure to state a claim upon which relief may be granted, under either § 1915(e)(2) or § 1915A(b), is still subject to our traditional de novo standard. *See Fraser v. Lintas: Campbell–Ewald*, 56 F.3d 722, 724 (6th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995).

## III. ANALYSIS OF PRISON LITIGATION ACT

■ By enacting the Prison Litigation Act, Congress has changed the procedure by which courts must analyze requests for pauper status. Courts no longer focus first on the merits of a prisoner's complaint. Rather, it is the prisoner's financial status that the courts must initially examine. Pauper status for inmates, as we previously knew it, no longer exists. While incarcerated, all prisoners must now pay the required filing fees and costs. 28 U.S.C. §§ 1915(b)(1)-(2), 1915(f)(2). When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir.1997).

### A. Prisoner Who Pays Filing Fee

When a prisoner files a complaint in the district court, the inmate must either pay the entire filing fee, or request leave to proceed in forma pauperis "without prepayment of fees or security therefor" under 28 U.S.C. § 1915(a)(1). If the inmate tenders the full filing fee, before service of process is made on the opposing parties, the district court must screen the case under the criteria of

§ 1915(e)(2) and § 1915A. The screening process must be in compliance with Section III(D) of this decision.

## B. Prisoner Pauper Documents

█ If the inmate files a complaint and seeks pauper status, the prisoner must file either Form 4 from the Appendix of Forms found in the Federal Rules of Appellate Procedure, or an affidavit which contains the identical information requested in Form 4. Although Form 4 does not satisfy the exact requirements of the statute, proposed amendments necessary to bring Form 4 into compliance with the Act are awaiting final approval at the time of this opinion. For administrative expediency, the present Form 4 will suffice for pauper requests until the new form is finalized. In addition to the affidavit, the prisoner must file a certified copy of a prison trust account statement showing the activity in the inmate's prison account for the previous six months. 28 U.S.C. § 1915(a)(2). As the Prison Litigation Act makes prisoners responsible for their filing fees the moment the civil action or appeal is filed, *see In re Tyler*, 110 F.3d at 529–30, we conclude that by filing the complaint or notice of appeal, the prisoner waives any objection to the fee assessment by the district court. Furthermore, the prisoner waives any objection to the withdrawal of funds from the trust account by prison officials to pay the prisoner's court fees and costs. A prisoner has a duty to cooperate during the litigation. *See Ballard v. Burrage*, 97 F.3d 382, 383 (10th Cir.1996) (order). Payment of litigation expenses is part of the prisoner's responsibility. Once the complaint, affidavit of indigency, and trust account statement have been filed, the district court must issue the fee assessment as required under Section III(C) and conduct the screening procedure set forth in Section III(D).

### 1. Failure To File Required Forms

If an inmate, not paying the full filing fee, fails to provide an affidavit of indigency or trust account statement, the district court must notify the prisoner of the deficiency and the prisoner will then have thirty days from the date of the deficiency order to correct the error or pay the full filing fee. If the prisoner does not comply with the district court's directions, the district court must presume that the prisoner is not a pauper and assess the inmate the full amount of fees. The district court must then order the case dismissed for want of prosecution. If the case is dismissed under these circumstances, it is not to be reinstated to the district court's active docket despite the subsequent payment of filing fees.

### 2. Extensions Of Time

█ A prisoner may seek leave to extend the thirty-day time period to correct any filing deficiency regarding pauper status. The district court may, in its discretion, grant such an extension for up to thirty days, as long as the inmate files the extension motion within thirty days after the district court files the order of deficiency. To be viable, an extension motion must be filed within thirty days of the deficiency order, unless the prisoner makes an affirmative showing that he or she did not receive the deficiency order within the thirty days. If such a showing is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746 and setting forth the date the inmate received the deficiency order, the district court may, in its discretion, grant an additional thirty days from the date of the filing of the extension order to allow the prisoner to correct the deficiency. The extension motion is deemed filed when the inmate gives the document to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988). When the inmate places the motion in the prison mail system, the inmate must provide with the extension motion a notarized statement or declaration complying with 28 U.S.C. § 1746, setting forth the date of deposit, and stating that first class postage was prepaid. This declaration assures the court that the documents were timely given to prison officials.

### 3. Inmate Without Any Funds

█ As with many provisions of the Prison Litigation Act, we address another vague-

ness. Section 1915(b)(1)(B) provides that when an initial partial filing fee is determined, the computation must be based on a six-month period immediately preceding the filing of the complaint or notice of appeal. Section 1915(b)(1)(A) does not contain such a time period. Under the ambiguous language of this provision, a court could consider years of deposits in making an assessment decision. However, because a prisoner is required to provide a certified copy of the trust fund account for only the six-month period immediately preceding the filing of the complaint or notice of appeal, 28 U.S.C. § 1915(a)(2), we hold that § 1915(b)(1)(A) is subject to the same six-month provision as that contained in § 1915(b)(1)(B).

When the mathematical computation provided under § 1915(b)(1) indicates that the prisoner is obligated to pay an initial partial filing fee despite evidence demonstrating that the prisoner is without any financial resources at the time the complaint or appeal is filed, pursuant to § 1915(b)(4) the district court must allow the case to proceed to the screening process. Although the statute permits a prisoner to avoid even partial payment of the filing fee at the commencement of the action, under these circumstances the district court is still required to impose an initial partial filing fee pursuant to § 1915(b)(1) and, when funds become available, the prisoner must pay the initial partial filing fee. The statute does not relieve the prisoner from the obligation of paying the initial partial filing fee. The payment is simply delayed until funds become available.

Even if the account balance is under ten dollars, prison officials must still forward payments to the district court to pay the initial partial filing fee. The ten-dollar rule of § 1915(b)(2) is applicable to fees and costs due only after the initial partial filing fee is paid. Once the initial partial filing fee is paid in full, the ten-dollar and twenty-percent requirements of § 1915(b)(2) become applicable.

For example, under § 1915(b)(1)(B), a district court determines that a prisoner owes an initial partial filing fee of fourteen dollars. The prisoner's trust account balance is zero. The district court must impose the fourteen dollar initial partial filing fee, but allow the case to proceed to screening. Thereafter, the prisoner receives deposits of three dollars per month in the trust account. Prison officials must forward each three-dollar deposit up to the first fourteen dollars to the district court clerk. Once the fourteen dollar initial partial filing fee is paid, the ten-dollar/twenty-percent rule of § 1915(b)(2) becomes applicable.

This process will prevent the problem of inmates keeping only minimum balances in their prison accounts to avoid paying any portion of the filing fee. The payments must be made even if the final judgment and/or appeal occurred several years before the deposit of funds.

■ The statute does not address the situation of a prisoner who possesses no money in a trust account for a period of six months prior to the filing of the complaint or appeal. If the prisoner has had no funds for the period in question, the mathematical formula of § 1915(b)(1) directs a finding of zero. Therefore, we conclude that no initial partial filing fee payment is required when a prisoner has had no funds in a trust account for the six months preceding the filing of the complaint or notice of appeal. Despite the lack of an initial partial filing fee, the prisoner is still obligated to pay the full filing fee when money does become available. Thus, in circumstances where the mathematical formula of § 1915(b)(1) produces a result of zero, the ten-dollar/twenty-percent rule of § 1915(b)(2) applies to all funds deposited after the § 1915(b)(1) assessment is made.

Suppose, for example, that the initial partial filing fee assessment is zero. Two months later, the prisoner receives three dollars. The three dollars is not subject to withdrawal because the prisoner's trust account balance is under ten dollars. The next month the prisoner receives eight dollars. Assuming that no expenditures were made, the account is now above ten dollars and the twenty-percent rule is applicable. No violation of the statute occurs if the application of the twenty-percent rule reduces the balance of the account below ten dollars. So long as the balance of the account is above ten dollars when the withdrawal is made, the re-

quirements of § 1915(b)(2) are satisfied. This procedure will obviously be conducted by prison authorities under § 1915(b)(2), as the district court is not required to continually compute the fees due the court on a monthly basis.

■ The statute also ignores the possibility of a fee computation resulting in a fraction of a cent, an amount a prisoner obviously cannot pay. We hold that in circumstances where the computation of fees results in a fraction of a cent, the district court should use its good common sense and round the fee to the nearest penny.

### C. Assessment Procedure

■ The key to the assessment procedure is the trust account. As the balance in the account can literally change on a daily basis, the question arises as to what date controls for purposes of § 1915(b)(1). Because the trust account is so fluid, the date the complaint or the notice of appeal is deemed filed with the clerk of the district court will be the controlling date for the computation of time under § 1915(b)(1). *See In re Tyler,* 110 F.3d at 529–30. As case law and the federal rules direct that a document is considered filed when given to prison authorities for mailing, *see* Fed. R.App. P. 25(a)(2)(C); *Houston,* 487 U.S. at 270, 108 S.Ct. at 2382; *Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1075 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1724, 137 L.Ed.2d 845 (1997), we hold that the date the prisoner gives the complaint or notice of appeal to prison authorities shall be the date the district court uses to determine the initial partial filing fee under § 1915(b)(1).

■ The fluctuating nature of trust funds makes it difficult to keep the information in the trust account summaries current for mailing to the district courts. If a district court decides to make an assessment computation, prison officials should supply the prisoner with the necessary financial records so the district court may make the required assessment. Inmates could create needless litigation over a few pennies by constantly arguing that the assessments were based on stale information if a district court chooses to calculate the assessment. The solution to this problem is to have the custodian of the account perform the computation and then send the money to the district court. To accomplish this goal, a district court may issue an order containing language similar to the following:

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of [prisoner's name]'s inmate trust account at the institution where [he or she] now resides is directed to submit to the Clerk of the United States District Court for the [Eastern, Western, Northern, Southern, Middle] District of [State], as an initial partial payment, twenty percent (20%) of the greater of *either* the average monthly deposits to the inmate trust account *or* the average monthly balance in the inmate trust account, for the six (6) months immediately preceding the filing of [the complaint or notice of appeal] on [date].

After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of [prisoner's name]'s preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full fees of one hundred and fifty dollars ($150) have been paid to the clerk of this court. 28 U.S.C. § 1915(b)(2).

Allowing the custodian of the account to make the computation of the initial partial filing fee under § 1915(b)(1) is in compliance with the statute and is certainly necessary in determining the partial payments required by § 1915(b)(2). The statute only requires the court to make the assessment. It does not require the court to make the actual mathematical computation. Even a voluntary dismissal of a complaint or an appeal does not eliminate a prisoner's obligation to pay the required filing fees. Section 1915(b)(1) compels the payment of the respective fees at the moment the complaint or notice of appeal is filed. *See In re Tyler,* 110 F.3d at 529–30. Any subsequent dismissal of the case does not negate this financial responsibility. *Id.; see also Thurman v. Gramley,* 97 F.3d 185, 187 (7th Cir.1996). However, a case may not be dismissed when the payment of an assessment has been delayed by prison officials. A prisoner cannot

be penalized when prison officials fail to promptly pay an assessment. Once the assessment is made, the case may continue to be processed in due course. The district court does not need to delay adjudicating a complaint until prison officials have sent the district court clerk the required initial partial filing fee.[1]

## D. Screening

 When screening a prisoner complaint, a district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of § 1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under § 1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)-

(2). *See In re Tyler*, 110 F.3d at 529–30. We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

## E. Civil Complaints From Indigent Non–Prisoners

Civil complaints brought by indigent non-prisoners in the district court differ from civil cases brought by indigent prisoners. Like prisoners, a non-prisoner seeking pauper status in the district court must file an affidavit listing all of his or her assets. 28 U.S.C. § 1915(a)(1); *Floyd*, 105 F.3d at 277. Therefore, indigent non-prisoners seeking pauper status, regardless of whether they are represented by counsel, must file Form 4 from the Appendix of Forms located in the Federal Rules of Appellate Procedure, or an affidavit which contains the same information found in Form 4. Once the affidavit is filed, pauper status may be determined.

### 1. Screening Process

 Unlike prisoner cases, complaints by non-prisoners are not subject to the screening process required by § 1915A. However, the district court must still screen the complaint under § 1915(e)(2). Even if a non-prisoner pays the filing fee and/or is represented by counsel, the complaint must be screened under § 1915(e)(2). The language of § 1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners. We, like other courts throughout the country, have had numerous prolific litigants who are non-prisoners and who pay the full filing fees, inundating the court with meritless actions. Section 1915(e)(2) provides us with the ability to screen these, as well as prisoner cases that satisfy the requirements of this section. The screening must occur even before process is

---

**1.** We note that a magistrate judge may issue a fee assessment order or grant an extension of time pursuant to 28 U.S.C. § 636(b)(1)(A), as these are non-dispositive decisions.

served or the individual has had an opportunity to amend the complaint. The moment the complaint is filed, it is subject to review under § 1915(e)(2). The complaint must be dismissed if it falls within the requirements of § 1915(e)(2) when filed.

Section 1915(e)(2) states that regardless of whether a filing fee has been paid, the district court must dismiss the case if the complaint satisfies the factors of § 1915(e)(2). Thus, even if the full filing fee is paid, the district court must dismiss the complaint if it comports with § 1915(e)(2). The statute, therefore, overrules *Clark v. Ocean Brand Tuna*, 974 F.2d 48, 50 (6th Cir.1992) (per curiam).

### 2. Failure To File Required Forms

Like a prisoner suit, the affidavit of indigency from a non-prisoner must be filed with the tendered complaint. *See Floyd*, 105 F.3d at 277. Because courts first must examine the individual's financial status, the non-prisoner must file an affidavit of indigency to proceed as a pauper. If the non-prisoner fails to pay the full filing fee or fails to file the affidavit with the complaint, the district court must notify the non-prisoner of the deficiency and the non-prisoner then has thirty days to correct the error. Should the non-prisoner fail to file the full filing fee or the affidavit of indigency, the district court must presume that the individual is not a pauper and dismiss the case for want of prosecution. Even if the individual tenders the filing fee after the dismissal, the case is not to be reinstated to the district court's active docket.

As in a prisoner case, a non-prisoner may seek an extension of time to file an affidavit or to pay the filing fee. *Id.* at 279. However, the non-prisoner must file the extension with the clerk of the district court, *see* Fed. R.Civ.P. 5(e), within thirty days of the district court's deficiency order, or the motion may not be granted unless the individual makes an affirmative showing that he or she did not receive the deficiency order within the thirty days. If such a showing, setting forth the date of actual receipt, is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746, then the district court may, in its discretion, grant an additional thirty days from the date of the filing of the extension order to allow the individual to complete the deficiency.

### F. Appeals By Prisoners

The Prison Litigation Act has also affected the appeal process. If a prisoner wishes to appeal an order or a judgment of the district court, the prisoner must file a notice of appeal. A prisoner not seeking pauper status must pay the entire filing fee with the clerk of the district court upon filing the notice of appeal. Fed. R.App. P. 3(e); *see also In re Tyler*, 110 F.3d at 529–30. If the prisoner fails to pay the required fees with the notice of appeal, the district court must inform the prisoner of the deficiency. The deficiency order should warn the prisoner that the court of appeals may dismiss the appeal for failure to prosecute under Fed. R.App. P. 3(a) and the district court will assess the entire filing fee should the prisoner not pay the entire filing fee within thirty days of the filing of the district court's deficiency order, or take the required steps to seek pauper status on appeal. If dismissed under these circumstances, the appeal will not be reinstated despite the subsequent payment of the filing fee or request for pauper status.

The district court is directed to send a copy of its deficiency order to the clerk of this court. Fed. R.App. P. 3(d); *see also Floyd*, 105 F.3d at 278. The prisoner may request an extension of time to pay the filing fee or to seek pauper status from the district court. *Floyd*, 105 F.3d at 279. The extension motion must be filed within thirty days of the district court's deficiency order, or the extension motion will not be granted unless the prisoner makes an affirmative showing that he or she did not receive the deficiency order within the thirty days. If such a showing is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746 and sets forth the date the prisoner received the notice, then the district court may, in its discretion, grant an additional thirty-day extension to allow the prisoner to rectify the deficiency. The extension motion will be deemed filed once the motion is given to prison authorities for mailing and the prison-

er has satisfied the verification requirements of Fed. R.App. P. 25(a)(2)(C). *See also Houston*, 487 U.S. at 270, 108 S.Ct. at 2382. Should the prisoner fail to comply with the district court's deficiency order, the clerk of the court of appeals must dismiss the case for want of prosecution and the district court will assess the entire filing fee, which is to be made payable to the clerk of the district court. *See* Fed. R.App. P. 3(e). Once dismissed under these circumstances, the appeal will not be reinstated even if the filing fee is subsequently paid.

### 1. Pauper Status On Appeal

■ If a prisoner wishes to proceed in forma pauperis on appeal, the prisoner must file in the district court, with the notice of appeal, a motion for leave to proceed in forma pauperis, a certified copy of a prison trust account statement, and Form 4 from the Appendix of Forms found in the Federal Rules of Appellate Procedure, or an affidavit which contains the same detailed information found in Form 4. In a departure from the former practice, an individual or prisoner granted pauper status before the district court is no longer automatically entitled to pauper status on appeal. *See Floyd*, 105 F.3d at 277–78 (noting that Prison Litigation Reform Act has superseded parts of Fed. R.App. P. 24(a)); *see also Jackson v. Stinnett*, 102 F.3d 132, 134–36 (5th Cir.1996). The statute requires that a prisoner seeking pauper status on appeal must file an affidavit of indigency and a certified copy of the prison trust account statement. 28 U.S.C. §§ 1915(a)(2), 1915(b)(1).

### 2. Failure To File Required Documents

If the prisoner fails to file the affidavit of indigency or the trust account statement, the district court must notify the prisoner of the deficiency. The district court must also inform the prisoner that if the prisoner does not file the required documents within thirty days, the court of appeals may dismiss the appeal for want of prosecution under Fed. R.App. P. 3(a) and the district court will assess the entire filing fee. If dismissed under these circumstances, the appeal will not be reinstated despite the payment of the full filing fee or subsequent correction of the deficiency. The prisoner may request from the district court an extension of time to pay the filing fee or to seek pauper status. If the motion is not filed within thirty days of the district court's deficiency order, the extension motion will not be granted unless the prisoner makes an affirmative showing that he or she did not receive the deficiency order within the thirty days. If such a showing sets forth the date the prisoner received the deficiency order and is made in a notarized statement or a declaration complying with 28 U.S.C. § 1746, then the district court may, in its discretion, grant an additional thirty days from the date of the filing of the extension order to allow the prisoner to correct the deficiency. The extension motion will be deemed filed once the motion is given to the prison authorities for mailing and the prisoner has satisfied the verification requirements of Fed. R.App. P. 25(a)(2)(C). *See also Houston*, 487 U.S. at 270, 108 S.Ct. at 2382. Should the prisoner fail to comply with the district court's deficiency order, the clerk of the court of appeals must dismiss the case for want of prosecution and the district court will assess the entire filing fee, which is to be made payable to the clerk of the district court. *See* Fed. R.App. P. 3(e). Once dismissed under these procedures, the appeal will not be reinstated despite the subsequent payment of the full filing fee or correction of the deficiency.

### 3. All Forms Filed And Good Faith Certification

■ The statute states that a district court must determine in writing whether a request to appeal in forma pauperis is taken in good faith. 28 U.S.C. § 1915(a)(3); *see also Floyd*, 105 F.3d at 277–79. In cases brought by prisoners, the certification does not affect a prisoner's responsibility to pay the required filing fee. Section 1915(a)(3) is modified by the provisions of § 1915(b)(1) (the section begins "[n]otwithstanding subsection (a)"). *See also* 28 U.S.C. § 1915(a)(1) ("[s]ubject to subsection (b)"). For a prisoner, the question of whether the appeal is taken in good faith is irrelevant as to the assessment of fees and costs. Under § 1915(b), the prisoner must pay the re-

quired filing fees regardless of the merits of the appeal. However, because such a certification would assist this court in reviewing an appeal under § 1915(e)(2)(B), we request the district courts to make a certification under § 1915(a)(3) for all cases filed by prisoners and for all cases filed by non-prisoners seeking leave to proceed in forma pauperis on appeal. *See Floyd,* 105 F.3d at 277–79. Failure to issue a § 1915(a)(3) certification may result in a remand.

As we discussed in *Floyd,* the statute creates a different procedure for non-prisoners. In contrast to cases brought by prisoners, if the district court concludes that the appeal is not taken in good faith, the non-prisoner must pay the entire filing fee and may not proceed on appeal as a pauper. *Id.* We note, however, that Floyd did not challenge the district court's certification that her appeal was frivolous. Thus, we were not presented with the issues discussed in *Johnson v. United States,* 352 U.S. 565, 566, 77 S.Ct. 550, 551, 1 L.Ed.2d 593 (1957) (per curiam) (court of appeals has duty to displace certification when there is a showing that appeal is taken in good faith); *Roberts v. United States Dist. Court,* 339 U.S. 844, 845, 70 S.Ct. 954, 955, 94 L.Ed. 1326 (1950) (per curiam) (denial of motion to proceed in forma pauperis is an appealable order); *Woods v. Dahlberg,* 894 F.2d 187, 187 & n. 1 (6th Cir.1990) (per curiam) (the denial of a motion to proceed in forma pauperis is the functional equivalent of an involuntary dismissal and the denial of pauper status is an appealable order); and *Phipps v. King,* 866 F.2d 824, 825 (6th Cir. 1988) (addressing question of whether the district court abused its discretion in denying application for pauper status). Because the district court certified that the appeal was not taken in good faith, and Fed. R.App. P. 24(a) was overruled in part by the Prison Litigation Act, we could not have granted Floyd pauper status on appeal.

### 4. Assessment Of Fees On Appeal By District Court

The statute permits any United States court to make the financial assessment for the commencement of an appeal. *See* 28 U.S.C. § 1915(a)(1). As the district court is best suited to control the assessment procedure and the collection process, the district court should make the financial assessment when a prisoner seeks pauper status on appeal and manage the subsequent collections.

Because the date the notice of appeal is filed with the district court controls the date of assessment under § 1915(b)(1), expediency requires that the district court issue the assessment order. If the financial assessment order was delayed until the case was transferred and docketed with the court of appeals, several weeks could pass before we could order the financial assessment. This lapse of time would allow prisoners to drain their trust accounts to avoid payment of their filing fees.

In issuing the assessment order, the district court may use the same order form which is located in Section III(C) if the prisoner does not have sufficient funds to pay the full fees. However, the current docketing and filing fees for the court of appeals total one hundred and five dollars, rather than the one hundred and fifty dollars required to file a case in the district court. Therefore, under our opinion today and our decision in *Floyd,* motions for pauper status before the court of the appeals no longer exist as such. These motions are now processed exclusively by the district courts. Our decision does not impair an individual's ability to request records, transcripts, or counsel before this court under § 1915(c) and § 1915(e)(1). Further, a non-prisoner is not prevented from challenging the district court's denial of pauper status or certification under § 1915(a)(3). *See Johnson,* 352 U.S. at 566, 77 S.Ct. at 550–51; *Roberts,* 339 U.S. at 845, 70 S.Ct. at 955; *Woods,* 894 F.2d at 187 & n. 1; *Phipps,* 866 F.2d at 825. Such a challenge, however, does not exist for a prisoner.

After the district court advises the court of appeals that the assessment procedure of § 1915(b) has been conducted, the appeal will proceed. An appeal will not be dismissed when the payment of an assessment has been delayed by prison officials. A prisoner cannot be penalized when prison officials fail to promptly pay an assessment. Because this decision applies to all cases and appeals filed on or after April 26, 1996, the date the Prison

Litigation Act was signed into law, all motions for pauper status in civil cases now pending before this court are to be remanded back to the district courts for processing in accordance with this decision. We leave for another day the question of whether the Prison Litigation Act applies to writs of mandamus and other original actions before this court. However, the procedures we outline today do not apply to habeas corpus petitions filed under 28 U.S.C. § 2254 and motions to vacate under 28 U.S.C. § 2255.

### G. *Tingler v. Marshall*

■ The Prison Litigation Act has overruled the procedures set forth in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir.1983). In *Tingler*, we stated that a district court may not sua sponte dismiss a plaintiff's suit unless the court first gives the plaintiff the opportunity to amend or correct the deficiencies in the complaint. *Id.* at 1111–12. Under § 1915(e)(2), a court is required to dismiss a case when the action satisfies § 1915(e)(2)(A) or § 1915(e)(2)(B). Under the Prison Litigation Act, courts have no discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal. If a complaint falls within the requirements of § 1915(e)(2) when filed, the district court should sua sponte dismiss the complaint. Section 1915A also provides for such sua sponte dismissals.

### H. Released Prisoner

■ As to the issue of released prisoners, the Second Circuit stated in *McGann v. Commissioner, Soc. Sec. Admin.*, 96 F.3d 28, 29–30 (2d Cir.1996):

Our initial question is whether the PLRA requirements, applicable to a person who files an appeal (or a complaint) while a prisoner, continue to apply after the person has been released from confinement. Section 804(a)(3) of the PLRA states that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (as amended). Section 804(a)(3) also specifies that the payments are to be made in installments: the initial payment is 20 percent of the greater of the average monthly deposits in the prisoner's account or the average balance in the account for the six months preceding the filing of a complaint or notice of appeal; subsequent payments are 20 percent of the preceding month's income credited to the prisoner's account in each month that the account exceeded $10. *Id.* § 1915(b)(1), (2) (as amended).

These provisions create a facial inconsistency as applied to a released prisoner. On the one hand, the statute broadly states that a prisoner who files an appeal "shall be required" to pay filing fees, and McGann was a prisoner when he filed his appeal. On the other hand, the amounts required to be paid are to be calculated as percentages of the balances of, or deposits into, the prisoner's prison account and are to be debited from that account, and now that McGann is no longer a prisoner, there is no prison account from which to calculate and debit the required payments. Thus, a literal reading of all provisions of the PLRA, as applied to released prisoners, is not possible.

There are two ways this facial inconsistency could be resolved. The PLRA could be construed to mean that once a prisoner files a complaint or appeal, he becomes liable for the full amount of filing fees, and, if released, must then pay the entire remaining amount of those fees or have his complaint or appeal dismissed. Alternatively, the PLRA could be construed to mean that the required partial fee payments are to be made only while the prisoner remains in prison, and that, upon his release, his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for i.f.p. status.

We think that the second construction better conforms to the overall structure of the PLRA. Though Congress specified that a prisoner "shall" pay the full amount of filing fees, the detailed mechanism it created for implementing this obligation by debiting prison accounts demonstrates that Congress expected the new payment requirement to apply to a prisoner who remains incarcerated. Indeed, if the payment obligation continued after release, the released prisoner, lacking a prison ac-

count from which partial payments could be debited, would have to pay the entire balance of the fee in a single payment, a result that would be more onerous than that imposed on those who remain incarcerated. It is not likely that Congress intended such a result. A released prisoner may litigate without further prepayment of fees upon satisfying the poverty affidavit requirement applicable to all non-prisoners.

The Second Circuit's analysis provides an efficient resolution of this procedural issue. We elect to adopt this procedure and therefore hold that a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated. After release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status. The decision of whether pauper status is available to a released prisoner will be made by the district court. Although not obligated to do so, prison officials should notify the federal district courts of the release of an inmate who has a financial obligation to the federal courts. This information will assist the courts in the collection of outstanding fees and costs.

## IV. APPLICATION OF PRISON LITIGATION ACT TO MCGORE'S COMPLAINT

 The essence of McGore's complaint is that the Ingham County Sheriff's Department failed to serve a summons on his behalf as an indigent plaintiff. Despite what appears to be a plausible access to the courts assertion, see *McCray v. Maryland*, 456 F.2d 1, 6 (4th Cir.1972), McGore has not established a viable claim against the defendants. Under Michigan's Rules of Civil Procedure, an indigent party may obtain service of process without payment of service fees. To obtain such relief, an indigent party must obtain a court order. Mich. Civ. R. 2.002(D). This requirement mandates that the indigent party submit an affidavit establishing his indigency and that the service must be made by an official process server. Mich. Civ. R. 2.002(A), (D), (F). After such a showing, the state court will issue an order directing the county or funding unit where the action is pending to pay the service fee. Mich. Civ. R.

2.002(F). As McGore has made no showing that he complied with Michigan's Rules of Civil Procedure, the sheriff's $14.60 charge for services simply did not deprive McGore of access to the courts.

Because the district court's application of the Prison Litigation Act to McGore's complaint is correct, we affirm the district court's judgment. However, consistent with our conclusion today that a district court is in a better position to make the fee assessment decision, we remand the case back to the district court for the purpose of assessing McGore the applicable appellate filing fees. The assessment should be based on McGore's financial status on the date McGore gave his notice of appeal to prison officials for mailing. If McGore has been subsequently released from incarceration during the pendency of this appeal, the district court's decision shall be determined in accordance with Section III(H) of this opinion.

## V. CONCLUSION

Accordingly, we **AFFIRM** the district court's judgment in all respects. However, we **REMAND** the case back to the district court for the sole purpose of assessing McGore the applicable filing fees for this appeal.