James R. KINCADE, Petitioner–Appellant,

v.

Emmit L. SPARKMAN, Warden; Commonwealth of Kentucky, Respondents–Appellees.

Anthony L. HEREFORD, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

Nos. 96–5842, 96–5872.

United States Court of Appeals, Sixth Circuit.

Argued April 28, 1997.

Decided June 26, 1997.

James R. Kincade, Burgin, KY, pro se, Eric M. Jaegers (argued and briefed), Louisville, Kentucky, for Petitioner–Appellant James R. Kincade.

Dina A. Jones, Asst. Attorney Gen. (argued and briefed), Office of the Attorney General, Frankfort, Kentucky, for Respondents–Appellees in Case No. 96–5842.

Eric M. Jaegers (argued and briefed), Louisville, Kentucky, Anthony Hereford, Miami, FL, pro se, for Petitioner–Appellant Anthony Hereford.

John P. MacCoon, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Chattanooga, Tennessee, for Respondent–Appellee in Case No. 96–5872.

Before: MARTIN, Chief Judge; KENNEDY and BOGGS, Circuit Judges.

## OPINION

BOYCE F. MARTIN, Jr., Chief Judge.

█ By order dated January 16, 1997, this Court consolidated these cases for the limited purpose of determining whether the filing fee provisions of the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, §§ 801–10, 110 Stat. 1321 apply to habeas corpus petitions filed under 28 U.S.C. § 2254 and to motions to vacate a sentence filed under 28 U.S.C. § 2255. Upon careful review of the text and history of the Prison Litigation Reform Act, we conclude that the term "civil action" set forth in 28 U.S.C. § 1915 does not include habeas corpus actions or motions to vacate.

The Prison Litigation Reform Act imposes a number of severe restrictions on the ability of prisoners to file civil litigation. Section 804 of that Act, now codified in 28 U.S.C. § 1915, amended the federal *in forma pauperis* statute to require that all prisoners pay filing fees to initiate or appeal civil actions in the federal courts regardless of the prisoner's financial status. These present consolidated appeals arise from the denial of James R. Kincade's petition for a writ of habeas corpus filed under § 2254, and from the denial of Anthony L. Hereford's motion to vacate sentence filed under § 2255. Both Kincade, a state prisoner, and Hereford, a federal prisoner, appealed their respective district court decisions. Kincade and Hereford requested pauper status on appeal. As prisoners, they face filing fees of one hundred and five dollars ($105) if this Court decides that the term "civil action" in § 1915 encompasses postconviction relief. We consolidated these cases to consider whether Congress intended the Prison Litigation Reform Act to erect an economic roadblock to indigent prisoners' power to pursue their claims of innocence through either § 2254 or § 2255, two traditional collateral approaches in the federal system of remedies.

These consolidated cases represent the tension between (1) the two laudable goals of reducing prison litigation and ensuring swift and fair trials and (2) the attempt to draft an all-purpose statute. Perhaps because of haste, the latter goal was not completely achieved, and we are therefore charged with construing the resulting language to carry out Congress's intent and yet not deprive indigent habeas petitioners of access to the courts. The Prison Litigation Reform Act is silent as to whether postconviction actions are properly within the realm of the "civil actions" contemplated by Congress.

Although courts have often separated habeas corpus petitions from criminal actions by characterizing habeas proceedings as civil in nature, "postconviction relief and prisoner civil rights relief are analytically very different." *Martin v. United States,* 96 F.3d 853, 855 (7th Cir.1996). Reading the term "civil" to include habeas petitions and motions to vacate produces absurd results. Because

§ 1915(g) limits a prisoner to three frivolous suits or appeals, the Prison Litigation Reform Act would eradicate habeas relief for prisoners who have a history of groundless civil suits. The peculiar nature of postconviction relief calls into question the plain meaning of the phrase "civil action" as used in § 1915. In cases where the language of the statute is ambiguous, this Court reviews the legislative history of the statute, recognizing that the "cardinal canon of statutory construction [is] that statutes should be interpreted harmoniously with their dominant legislative purpose." *United States v. Barry*, 888 F.2d 1092, 1096 (6th Cir.1989) (quoting *Spilker v. Shayne Labs., Inc.*, 520 F.2d 523, 525 (9th Cir.1975)). Thus, in order to determine whether the filing fee provisions of the Prison Litigation Reform Act apply to § 2254 and § 2255, we must examine their context within the statute. *United States v. Markwood*, 48 F.3d 969, 975 n. 7 (6th Cir.1995) (citing *In re Vause*, 886 F.2d 794, 801 (6th Cir.1989)).

Review of the relevant congressional history reflects that Congress intended to curb the alarming explosion of civil rights lawsuits filed by both state and federal prisoners which, to the Act's sponsors, appeared in great measure to raise frivolous due process and cruel and unusual punishment claims. When he introduced the Prison Litigation Reform Act, Senator Dole concentrated on suits regarding petty grievances such as insufficient locker space and the service of creamy rather than chunky peanut butter. 141 CONG. REC. S7524 (daily ed. May 25, 1995). The two floor debates and hearing concerning the Prison Litigation Reform Act simply focused on more examples of frivolous prison condition suits. Amidst all of the hue and cry over the alarming growth of prisoner civil rights litigation, the legislative history of the Act does not contain a single complaint or example concerning postconviction criminal proceedings.

The text of the Prison Litigation Reform Act itself reflects that the drafters' primary objective was to curb prison condition litigation. The Prison Litigation Reform Act erects a complex installment process by which prisoners may pay their filing fee obli-

gations. *McGore v. Wrigglesworth*, 114 F.3d 601, 604–13 (6th Cir.1997). While this payment plan is likely to be useful to litigants working to satisfy a civil filing fee of $150.00, it is unlikely that Congress intended for the Prison Litigation Reform Act to reach habeas corpus actions "merely to assure deferred monthly payments of a $5.00 fee." *Santana v. United States*, 98 F.3d 752, 756 (3d Cir. 1996); *see Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir.1996). Unless habeas corpus actions are implicitly distinguishable, the enactment of legislation to curtail prisoner suits is at odds with Congress's commitment to discounted habeas corpus filing fees.

Perhaps the most revealing piece of this statutory puzzle is contained in another statute, however. Two days before enacting the Prison Litigation Reform Act, Congress gave specific attention to perceived abuses in the filing of habeas corpus petitions and motions to vacate by passing Title I of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. The Death Penalty Act, like the Prison Litigation Reform Act, imposes restrictions on filing second or successive filings but, unlike the Prison Litigation Reform Act, the Death Penalty Act is specifically tailored to address habeas corpus petitions and motions to vacate. Thus, had Congress intended to amend the pauper statute to include postconviction petitions, the Death Penalty Act would have presented the perfect forum. Significantly, the Death Penalty Act makes no such change.

For the foregoing reasons we join a number of other circuits in the conclusion that the fee requirements of the Prison Litigation Reform Act do not apply to cases or appeals brought under § 2254 and § 2255. Accordingly, the Clerk of this Court and the clerks of all of the district courts in this circuit shall *not* impose the financial requirements of the Prison Litigation Reform Act on *in forma pauperis* cases brought under § 2254 and § 2255.

Because the filing fee provisions of the Prison Litigation Reform Act do not apply to actions brought pursuant to § 2254 or § 2255, the restriction contained in § 1915(a)(3) poses no obstacle to this Court

hearing these cases *in forma pauperis*. Because we conclude that the filing fee requirements of the Prison Litigation Reform Act are inapplicable to § 2254 and § 2255, a prisoner who is unable to pay the required filing fees may seek leave to file an appeal in a § 2254 or § 2255 action pursuant to Rule 24(a) of the Federal Rules of Appellate Procedure. *Cf. Floyd v. United States Postal Serv.*, 105 F.3d 274, 276 (6th Cir.1997).

We note that this conclusion is consistent with our decisions in *Floyd* and *McGore*. In *Floyd*, we held that because the Prison Litigation Reform Act conflicted with Fed. R.App. P. 24, the Act superceded the rule. *Id.* at 277–28. In *McGore*, we delegated the responsibility of assessing fees brought by prisoners to the district courts because under the Prison Litigation Reform Act, all prisoners are required to pay the applicable filing fees. *McGore*, 114 F.3d at 611. Because we have concluded that the mandatory fee requirements of the Prison Litigation Reform Act are not applicable to § 2254 and § 2255, the procedures of *Floyd* and *McGore* are inapplicable to cases brought under these statutes.

■ We are faced with the problem of how a prisoner, who submits a § 2254 or § 2255 action in the district court, can avoid payment of the required filing fees. Unlike the appellate courts, which have Fed. R.App. P. 24 available to waive the fees, no equivalent rule exists for the district courts. The only available authority to waive the district court filing fee is § 1915. Section 1915(a)(1) states that any United States court may authorize any proceeding to go forward without prepayment of fees by a person who submits an affidavit, listing the individual's assets, and establishing that the person is unable to pay the required fees. By exempting § 2254 and § 2255 from the provisions of § 1915(b) and the three strikes provision of § 1915(g) (as this provision has a comparable provision in 28 U.S.C. § 2244(b)), we provide a prisoner the ability to seek § 2254 and § 2255 relief as a pauper under § 1915(a)(1). This conclusion requires that the prisoner submit an affidavit of indigency in compliance with § 1915(a)(1). However, a prisoner is not required to file a trust account statement be-

cause the information contained in the trust account is only necessary for the payment formula of § 1915(b). Therefore, we hold that any prisoner seeking § 2254 and § 2255 relief in the district court as a pauper is required to file an affidavit that includes a list of all assets that the prisoner possesses and a statement that the prisoner is unable to pay the required filing fee. Furthermore, the prisoner is not required to file a trust account statement. If the prisoner is a pauper, the district court may grant the prisoner pauper status and the case may proceed in normal course. If the prisoner wishes to proceed *in forma pauperis* on appeal after the district court has issued its judgment, the case must be processed in accordance with Fed. R.App. P. 24(a). In addition, as we explain later, the district court must certify any issue for appeal.

After the district court has issued its certifications, we can then review the prisoners' appeals under the provisions of Fed. R.App. P. 22(b), Fed. R.App. P. 24(a), and 28 U.S.C. § 2253. Thus, we will consider motions to proceed *in forma pauperis* on appeal in § 2254 and § 2255 actions. Whether we will entertain such requests in actions filed pursuant 28 U.S.C. § 2241 or in original actions before this court such as writs of mandamus and prohibition, we leave to another occasion.

■ Although we have exempted § 2254 and § 2255 actions from the mandatory payment provisions of § 1915, a prisoner may not attempt to cloak another civil action, such as an alleged civil rights violation, under the auspices of § 2254 and § 2255. If faced with such an attempt, the district court must assess the prisoner the applicable one hundred and fifty dollar filing fee in accordance with *McGore*. Further, if a notice of appeal is filed in such a case, the district court must assess the applicable appellate filing fee of one hundred and five dollars under the *McGore* procedures. We emphasize that our decision today does not affect any aspect of the substantive law concerning § 2254 and § 2255 actions, nor does it affect our prior decisions concerning the procedures necessary to bring a timely appeal in these cases.

We have considered timely motions for pauper status for both Kincade and Hereford

in the interest of judicial efficiency, even though we would normally process such requests as matters to be initially resolved by a single judge rather than a three-judge panel. After careful review of both of the records before the district courts below, we grant both prisoners' requests to proceed *in forma pauperis.*

The district court granted Kincade a certificate of appealability on the issue of prosecutorial misconduct but denied his requests for certificates of appealability as to Kincade's ineffective assistance of counsel and cumulative effect of errors claims. By filing a notice of appeal, Kincade filed an informal request with this Court to review the district court's denial as to his remaining claims. After considerable review, we have decided that Kincade's ineffective assistance of counsel and cumulative effect of errors claims do not present sufficient showings of a denial of a constitutional right. *Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1073 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1724, 137 L.Ed.2d 845 (1997). Accordingly, Kincade's claim will proceed to briefing on the sole issue of prosecutorial misconduct.

Hereford has neither received nor been denied a certificate of appealability. The Death Penalty Act requires that Hereford go through that process, however. Our opinion in *Lyons* does not address whether this Court has the ability to make such a determination in the first instance, but the Second Circuit has interpreted Rule 22(b) of the Federal Rules of Appellate Procedure as requiring petitioners appealing the denial of a § 2254 or § 2255 petition to apply first to the district court for a certificate of appealability. *See Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir.1997). The Second Circuit's interpretation is supported by reasons that strongly suggests that district courts must be the initial decision-maker and we therefore accept the Second Circuit's analysis as our own. Accordingly, Hereford's appeal is remanded to the district court for the sole purpose of determining whether to grant or deny a certificate of appealability for his claim.

We thus direct the Clerk of this Court to remand any pending request for certificate of appealability that has not first been presented to the district court. A remand is not necessary if the prisoner sought a certificate from the district court but that request was denied on the merits. Finally, our decision is not applicable to motions that have previously been ruled upon by a judge of this Court; because this Court has already determined that the certificate request did not establish the denial of a constitutional right, a remand in such cases would be superfluous.