Robert SCHWARTZ, Plaintiff–Appellant,

v.

Bill OWENS, Governor of the State of Colorado, Defendant–Appellee.

No. 04CA1270.

Colorado Court of Appeals, Div. I.

Oct. 20, 2005.

Rehearing Denied Nov. 10, 2005.

Certiorari Denied May 8, 2006.

456

Robert Schwartz, Pro Se.

No Appearance for Defendant–Appellee.

HAWTHORNE, J.

Plaintiff, Robert Schwartz, appeals from the trial court orders denying his request to have defendant, Governor Bill Owens, served with process at state expense and assessing court costs against plaintiff. We affirm.

Plaintiff's complaint alleges that he filed a petition for clemency with the Governor on May 28, 2002. To date he has received no response, even after he sent several postpetition letters requesting one.

After not receiving a response for more than a year, plaintiff filed the instant action under C.R.C.P. 106, seeking an order compelling the Governor to consider his petition and reduce his sentence or, in the alternative, to set this matter for a hearing.

Plaintiff filed a motion to proceed in forma pauperis, which the trial court granted. He then filed a motion requesting service of process on the Governor at state expense. After reviewing plaintiff's complaint, the trial court denied the motion, ruling that plaintiff failed to state a claim because inmates have no due process right to clemency proceedings. The court then imposed $136 in costs on plaintiff. This appeal ensued.

## I.

■ As an initial matter, we reject plaintiff's contention that the trial court abandoned its duty to act as a detached arbiter in this matter because the trial court "sua sponte" dismissed his complaint for failure to state a claim upon which relief could be granted.

■ A trial court should normally refrain from dismissing a complaint for failure to state a claim unless the deficiency is brought to its attention by the parties through pleadings or motions. *Rubins v. Plummer*, 813 P.2d 778 (Colo.App.1990). However, there are cases where dismissal of a claim may be proper even where no motion requesting dismissal has been filed. *ISG, LLC v. Arkansas Valley Ditch Ass'n*, 120 P.3d 724 (2005). If the court is inclined to dismiss a complaint sua sponte, it should, as a matter of fundamental fairness, if not due process, give the plaintiff an opportunity to persuade the court that dismissal is not prop-

er. *Rubins v. Plummer, supra*, 813 P.2d at 779.

■ Even a technically flawed dismissal may be affirmed if it was entered as a matter of law and the party that lost its claim had adequate opportunity but did not offer any evidence or argument on which the claim could have survived. *See ISG, LLC v. Arkansas Valley Ditch Ass'n, supra*. In addition, under appropriate circumstances, a reviewing court may resolve, as a matter of law, whether a plaintiff has failed to state a claim upon which relief can be granted. *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133 (Colo.App.2002) (trial court's order of dismissal, which did not grant plaintiff an opportunity to amend its pleadings, affirmed where the record indicated that there was no possibility that plaintiff could set forth a claim for which relief could be granted), *aff'd*, 90 P.3d 859 (Colo.2004).

Here, the trial court dismissed plaintiff's complaint after it reviewed the pleading pursuant to § 13–17.5–103, C.R.S.2005, the statute which governs the assessment of filing fees and costs in inmate lawsuits. That section provides in pertinent part:

(1) ... If the inmate account demonstrates that the inmate has sufficient funds to pay the filing fee, or if the action on its face is frivolous, groundless, or malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief, the motion to proceed as a poor person shall be denied.

This statute requires the trial court to determine whether an inmate's suit is frivolous, groundless, or malicious or fails to state a claim for relief for purposes of determining whether to grant a motion to proceed as a poor person. Thus, when the trial court analyzed plaintiff's complaint and determined that it failed to state a claim for relief, it was not acting as an advocate, but was merely complying with its statutory duty.

As is shown below, our own analysis confirms that plaintiff did not, and could not, state a claim which could survive a motion to dismiss. Thus, even assuming that it was

improper for the trial court to dismiss plaintiff's complaint sua sponte here, our own view of the statutory framework demonstrates that there was no possibility that his suit could go forward. We therefore affirm the trial court's order of dismissal.

## II.

■ Plaintiff contends that the trial court erred when it dismissed his complaint on the basis that he was not entitled to due process in regard to a response to or hearing on his clemency application. We disagree.

■ Prisoners have no federal constitutional or fundamental right to a clemency proceeding. *Herrera v. Collins*, 506 U.S. 390, 414, 113 S.Ct. 853, 867, 122 L.Ed.2d 203 (1993); *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981); *Duvall v. Keating*, 162 F.3d 1058, 1060 (10th Cir.1998); *Joubert v. Nebraska Bd. of Pardons*, 87 F.3d 966, 968 (8th Cir.1996).

Nonetheless, a state can create an additional right to some form of due process. *Connecticut Bd. of Pardons v. Dumschat*, *supra*, 452 U.S. at 463, 101 S.Ct. at 2464; *see also Duvall v. Keating*, *supra* (analyzing prisoner's claimed due process right to clemency proceeding under the Oklahoma Constitution).

Article IV, § 7 of the Colorado Constitution provides in pertinent part:

> The governor shall have power to grant reprieves, commutations and pardons after conviction, for all offenses except treason, and except in case of impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons, but he shall in every case where he may exercise this power, send to the general assembly at its first session thereafter, a transcript of the petition, all proceedings, and the reasons for his action.

Article IV, § 7 gives the Governor the exclusive power to grant reprieves, commutations, and pardons after conviction. *People v. Davis*, 186 Colo. 186, 188, 526 P.2d 312, 313 (1974); *People ex rel. Dunbar v. Dist. Court*, 180 Colo. 107, 111, 502 P.2d 420, 422 (1972);

*People v. Lyons*, 44 Colo.App. 126, 127–28, 618 P.2d 673, 675 (1980).

However, the Governor's power is constitutionally limited in three respects. First, the Governor's power to grant reprieves, commutations, and pardons may not be exercised in cases involving convictions for treason. Second, the General Assembly may impose regulations regarding "the manner of applying for pardons." Third, in the event the Governor exercises his power, he must send to the General Assembly "a transcript of the petition, all proceedings, and the reasons for his action." Colo. Const. art. IV, § 7.

The General Assembly has passed two laws relating to the Governor's power to pardon or commute a sentence. Section 16–17–101, C.R.S.2005, addressing a death sentence in any capital case, is not pertinent here. Section 16–17–102, C.R.S.2005, provides that all applications for commutation or pardon "shall be accompanied by a certificate of the respective superintendent of the correctional facility, showing the conduct of an applicant during his confinement in the correctional facility, together with such evidences of former good character as the applicant may be able to produce." Section 16–17–102 also provides that, prior to granting a pardon or commutation of sentence, the Governor must submit the application to "the present district attorney of the district in which the applicant was convicted," the prosecuting attorney, and the sentencing judge in the applicant's case for their comments.

These statutes impose no duty upon the Governor to acknowledge receipt of an application for clemency or to take any action on an application.

In 1999, the Governor created the Executive Clemency Advisory Board (ECAB) and charged it with the responsibility for making advisory recommendations for executive clemency to the Governor. Executive Order B–002–99 (1999), which created the ECAB, also defined its powers and duties. In pertinent part, the order provides, "Under no circumstances is the Board required to review, process or respond to any requests for clemency. Unless specifically directed by the Governor, it is within the Board's sole discretion to determine which applications or

petitions for executive clemency will be reviewed."

Here, plaintiff's due process claim is based on the failure of the Governor to respond to his petition for clemency. However, Executive Order B–002–99 specifically provides that the ECAB has no obligation to review, process, or respond to any request for clemency. Nothing in the Colorado Constitution, statutes, or case law cited grants any inmate a due process right to any kind of clemency proceeding.

"[T]he mere existence of a power to commute a lawfully imposed sentence ... create[s] no right or 'entitlement.' A state cannot be required to explain its reasons for a decision when it is not required to act on prescribed grounds." *Connecticut Bd. of Pardons v. Dumschat, supra,* 452 U.S. at 467, 101 S.Ct. at 2465.

■ In Colorado, the power of clemency is entirely at the Governor's discretion, and through Executive Order B–002–99, he has clearly mandated that the ECAB is under no obligation to consider or respond to an inmate's petition. Plaintiff's expectation of clemency is "simply a unilateral hope." *Connecticut Bd. of Pardons v. Dumschat, supra,* 452 U.S. at 465, 101 S.Ct. at 2465.

We therefore conclude that the trial court correctly ruled that plaintiff was not entitled to due process in regard to a response to or hearing on his clemency petition.

### III.

■ Plaintiff also contends that the trial court erred in assessing a filing fee of $136 against him after granting his motion to proceed as a poor person and then dismissing his complaint for failure to state a claim upon which relief could be granted. We disagree.

We must determine whether the trial court properly applied § 13–17.5–103. Because the pertinent facts are undisputed, and the question can be resolved as a matter of law, we review the trial court's ruling de novo. *In re Estate of Sheridan,* 117 P.3d 39, 40 (Colo. App.2004).

■ There is no Colorado case law directly on point. However, when the pertinent portions of the Colorado and federal statutes are essentially the same, federal authority is persuasive in analysis of the Colorado statute. *See Forbes v. Goldenhersh,* 899 P.2d 246, 249 (Colo.App.1994).

■ "Whether a litigant is indigent and thus entitled to prosecute a civil action without payment of costs, as provided in § 13–16–103, C.R.S. 200[5], is generally a matter committed to the discretion of the trial court. However, in civil actions brought by prison inmates, the trial court's discretion is limited by § 13–17.5–103, one of several related statutes enacted in 1995 to address inmate civil actions." *Collins v. Jaquez,* 15 P.3d 299, 301 (Colo.App.2000).

Section 13–17.5–103(2), C.R.S.2005, provides in pertinent part that "[a]ny inmate who is allowed to proceed in [a] civil action as a poor person shall be required to pay the full amount of the filing fee." The comparable portion of the federal statute provides that "if a prisoner brings a civil action ... in forma pauperis ... the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (2005). Both statutes state a method for calculating an initial partial payment and installments to allow the inmate to complete payment of the filing fee. Section 13–17.5–103(2); 28 U.S.C. § 1915(b)(1)-(2). Neither statute provides for waiver of the filing fee.

Here, the trial court denied plaintiff's first motion to proceed in forma pauperis for failure to provide a copy of his inmate account statement for the preceding six months. When plaintiff filed for reconsideration with a more complete account statement, the trial court granted his motion, assessed plaintiff the filing fee of $136, and ordered that it be paid in monthly installments in accordance with § 13–17.5–103(2). The court then dismissed the case, ruling that plaintiff was not entitled to due process with regard to his request for commutation.

The current version of § 13–17.5–103 was in effect when plaintiff filed his complaint in 2004. Because the statute does not provide for waiver of the filing fee, when plaintiff filed his civil action, he was required either to pay the entire filing fee or to seek to proceed

"without prepayment of fees" as a poor person. In either event, plaintiff became responsible for the filing fee the moment his action was filed. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir.1997).

When an inmate seeks to proceed as a poor person, § 13–17.5–103(1) imposes on the trial court an obligation to determine whether the inmate is indigent and, if so, whether the inmate has a legitimate claim. If the court determines that the inmate does not have sufficient funds to pay the filing fee and the action on its face is not frivolous, groundless, or malicious, and states a claim upon which relief may be granted and does not seek monetary relief from a defendant who is immune from such relief, it shall allow the inmate to proceed as a poor person under § 13–17.5–103(2).

However, being granted the ability to proceed as a poor person under § 13–17.5–103, without prepayment of fees, does not relieve an inmate from liability for the filing fee. Indigent inmates are not excused from paying the filing fee. The payment of the fee is merely placed on an installment schedule.

Plaintiff further claims that he should not have been assessed the filing fee because the trial court dismissed his complaint after finding him indigent and allowing him to proceed as a poor person. We again disagree.

In applying § 13–17.5–103, we again agree with the view expressed by the Sixth Circuit Court of Appeals that "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *McGore, supra*, 114 F.3d at 604. Therefore, had the trial court first denied plaintiff's motion to proceed in forma pauperis because his complaint failed to state a claim upon which relief could be granted, and then dismissed his complaint on the same basis, plaintiff would have been required to pay the filing fee in full rather than in installments pursuant to § 13–17.5–103(2). The dismissal of plaintiff's action does not negate his obligation to pay the filing fee. *See McGore, supra*, 114 F.3d at 608.

The trial court's order, albeit inconsistent with the mandate of § 13–17.5–103(1), allowed plaintiff to pay the filing fee in installments. Because the issue of whether the trial court abused its discretion by allowing plaintiff to proceed as a poor person when it determined plaintiff's action failed to state a claim was not raised, we do not address it here.

We therefore conclude that the trial court did not err when it assessed the filing fee against plaintiff.

The orders of the trial court are affirmed.

Judge MARQUEZ and Judge GRAHAM concur.