Julian **FERNANDEZ LUIZ**, Petitioner,

v.

Mark **LUTTRELL**, Respondent.

No. 98–3074 M1/A.

United States District Court,
W.D. Tennessee,
Western Division.

April 20, 1999.

Julian Fernandez Luiz, Memphis, TN, pro se.

Brian J. Quarles, U.S. Attorney's Office, Memphis, TN, David M. McConnell, Emily Anne Radford, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, David W. Ogden, Loreto S. Geisse, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for respondents.

## ORDER OF DISMISSAL

McCALLA, District Judge.

Julian Fernandez Luiz, a native and citizen of Cuba who arrived in this country in 1980 in the Mariel boatlift, has filed a petition pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus ordering his release from federal custody. For the reasons discussed below, the Court DENIES the petition and DISMISSES this matter.

*Background.*

Petitioner came to this country from Cuba as part of the Mariel boatlift in 1980. Upon his arrival, he stated that he had been arrested twice in Cuba for stealing clothes from homes. He was serving a three year term of imprisonment for the second offense when he was taken to Mariel and then sent to the United States.

On June 4, 1981, Petitioner was freed from custody on immigration parole. Shortly afterwards, on August 29, 1981, he was arrested for indecency with a child younger than seventeen years. A Texas court convicted him and sentenced him to a seven year suspended sentence and probation. He violated his probation in 1982 and was sentenced to three years of confinement.

On January 11, 1985, Petitioner pleaded guilty in Texas court to burglary of a building and received a five year suspended sentence. He again violated the terms of his probation and was sentenced in 1989 to three years confinement. On February 5, 1990, Petitioner pleaded guilty to forgery by possession of a check with intent to pass and was sentenced to four years confinement by a Texas court. Because of these three convictions, the Immigration and Naturalization Service (INS) revoked Petitioner's parole on July 25, 1990. He was then returned to federal custody and has been in federal prisons and psychiatric centers through the time he filed this petition.

Since returning to federal custody, Petitioner has received several psychiatric evaluations and has been diagnosed with chronic schizophrenia. In addition to stating his belief that he is Jesus Christ, Petitioner has displayed extremely disruptive behavior including publicly masturbating, threatening correctional officers, and setting fires.

On several occasions since the revocation of his parole, the INS has reconsidered his parole status pursuant to the regulations set forth at 8 C.F.R. § 212.12. The

INS has denied him parole each time, most recently on December 14, 1998, because it determined that Petitioner has demonstrated a propensity to engage in violent criminal behavior.

Petitioner filed an earlier petition for a writ of habeas corpus in the Western District of Missouri in 1995. On March 4, 1996, the district court dismissed the petition and, on April 30, 1996, the Court of Appeals for the Eighth Circuit dismissed his appeal.

### Discussion.

#### A. Petitioner's Successive Petition.

Respondent initially argues that the Court should not review the merits of Petitioner's petition as he has already litigated these issues in the Western District of Missouri. He suggests that some combination of the law of the case doctrine, res judicata, and abuse of the writ jurisprudence bars review of Petitioner's claims by this Court.

■ As an initial matter, it is well-settled that the principles of res judicata have no application in habeas corpus cases. *See Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

■ Neither is law of the case doctrine applicable to this matter. Unlike res judicata, law of the case principles are applicable to habeas proceedings. *See Shore v. Warden, Stateville Prison,* 942 F.2d 1117, 1123 (7th Cir.1991). Respondent in this matter, however, has failed to provide the Court with materials from which to determine what issues the Western District of Missouri resolved in the prior proceeding. As the Court merely has information showing that the circuit and district courts denied Petitioner's motions to proceed in forma pauperis, it cannot now determine that the claims presented in the pending petition were fully litigated and resolved adversely to Petitioner. *See* Resp't's Ex. A at 213–14.

■ There is some support for Respondent's proposition that abuse of the writ jurisprudence should apply to bar consideration of this § 2241 petition. *See Chambers v. United States,* 106 F.3d 472, 474–75 (2d Cir.1997); *Leyva v. Meissner,* 996 F.Supp. 831, 834–35 (C.D.Ill.1998); *Byrd v. Gillis,* No. Civ. A. 97–4697, 1997 WL 698157, at *1 (E.D.Pa. Nov. 5, 1997); *Sinclair v. Jenkins,* No. 93–3301–RDR, 1996 WL 511790, at *1 (D.Kan. Sept. 6, 1996). However, recent codifications of abuse of the writ law by Congress have noticeably omitted § 2241 petitions from their coverage. *See* 28 U.S.C. § 2244 (imposing restriction on successive petitions challenging confinement pursuant to a state court judgment); 28 U.S.C. § 2255 (imposing restrictions on successive petitions challenging confinement pursuant to a judgment of a federal court). Additionally, Respondent has failed to bring to the Court's attention any decision by a court of this circuit applying abuse of the writ principles to a § 2241 petition. Accordingly, the Court finds that the denial of Petitioner's earlier petition does not bar this Court from addressing his claims on their merits.

#### B. Claim for Relief.

■ Petitioner asserts that, as he is confined indefinitely in a federal prison pursuant to the judgment of no court and without any reasonable prospect of a change in his situation, Due Process requires that he be released.

Petitioner does not contest the determination of the Attorney General that he is an excludable alien. Ordinarily, the Attorney General may detain excludable aliens prior to deporting them to their country of origin or another state willing to accept them. Cuba, however, has been largely unwilling to accept back the members of the Mariel boatlift; other states have been similarly unwilling to accept these people. For purposes of this motion, the Court accepts Petitioner's contention that prospects for his repatriation or release are slim despite the efforts of the United States Department of State. *See* Resp't's Ex. B (noting that the Department of

State continues to negotiate with Cuba for the return of the members of the Mariel boatlift).

As Petitioner is subjected to detention of an indefinite duration, his situation is very similar to that of the petitioner in *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). When Mezei arrived at Ellis Island in New York Harbor, the Attorney General excluded him from this country. He tried to take ship to France and Great Britain, but neither of those countries were willing to take him in. Finding himself stranded on Ellis Island, he filed a petition for a writ of habeas corpus. *See id.* at 208–09.

The Supreme Court held that, for purposes of assessing the constitutionality of Mezei's detention, he should be treated as if outside the borders of the United States. *See id.* at 215. The Court noted that Congress might have refused Mezei permission to land on Ellis Island until the Attorney General determined whether to admit him and that its act of "legislative grace," permitting him to come ashore, "bestows no additional rights." *Id.* The Court concluded that Mezei's indefinite detention deprived him of no statutory or constitutional right. *See id.* The Court also noted that the due process rights of an excluded alien are extremely low. *See id.* at 212 ("'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'"(quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950))).

The Court is unable to discern a relevant difference between the situation of Mezei and the Petitioner at bar. Like Mezei, the United States permitted members of the Mariel boatlift to come ashore, rather than remain adrift at sea, before determining their eligibility to remain in this country. The Attorney General later gave many, including Petitioner, the opportunity to live in the country outside of federal detention. The fact that the United States has retracted this privilege in light of Petitioner's criminal conduct does not raise his continued detention to a constitutional issue. Additionally, there is no indication that the Attorney General has not scrupulously followed the procedures authorized by Congress throughout the term of Petitioner's stay in this country.

■ The vast majority of courts that have considered the constitutionality of long-term detention of excludable aliens have similarly found it permissible. *See, e.g., Guzman v. Tippy,* 130 F.3d 64, 66 (2d Cir.1997); *Gonzalez v. Luttrell,* 100 F.3d 956, 1996 WL 627717 (6th Cir. Oct. 29, 1996); *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1446 (9th Cir.1995) (en banc); *Gisbert v. U.S. Attorney General,* 988 F.2d 1437 (5th Cir.1993), *modified* 997 F.2d 1122 (5th Cir.1993); *Fernandez–Roque v. Smith,* 734 F.2d 576 (11th Cir.1984); *Palma v. Verdeyen,* 676 F.2d 100 (4th Cir. 1982). Although some few courts have held otherwise, *see, e.g., Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981); *Bernal–Manes v. Luttrell,* No. 97–2450 (W.D.Tenn. Sept. 30, 1998), the Court finds the cases permitting the indefinite detention of excludable aliens more persuasive.

Additionally, Petitioner's claim that his continued confinement violates the Sixth Amendment to the Constitution is without merit. By its very terms, the Sixth Amendment provides protection to defendants involved in criminal proceedings. *See* U.S. Const. amend. VI ("In all criminal prosecutions …".). Although Petitioner is confined, he is not undergoing punishment. *See Gisbert,* 988 F.2d at 1442; *Alvarez–Mendez v. Stock,* 941 F.2d 956, 962 (9th Cir.1991). The largely unique situation of members of the Mariel boatlift has left the Attorney General with few alternatives other than their indefinite detention in the federal prison system. As this situation arises from efforts to implement national immigration policy and not out of punitive efforts, no Sixth Amendment right of Petitioner is implicated.

To the extent that Petitioner claims that the Attorney General is without statutory authority to detain him, his claims are without merit. Congress has explicitly granted the Attorney General the authority to parole, at her discretion, an alien applying for admission to the United States. *See* 8 U.S.C. § 1182(d)(5)(A). A grant of parole does not affect the alien's status as excludable and the Attorney General may revoke parole when she determines that its purposes have been served. *See id.* The converse of this broad authority to deal with excludable aliens is the authority to refuse to parole an exludable alien as well as the authority to rescind parole in light of criminal behavior. *See Guzman,* 130 F.3d at 66; *Barrera–Echavarria,* 44 F.3d at 1446. Additionally, although Congress requires the Attorney General to remove aliens within ninety days in most circumstances, it has explicitly granted her the authority to retain an inadmissible alien in custody beyond this period. *See* 8 U.S.C. § 1231(a)(6). The Attorney General therefore has the authority to indefinitely detain an excludable alien.

Finally, the Court finds that Petitioner's reliance on international law is misplaced. Although courts should give deference to international law, it is only controlling "where there is no treaty and no controlling executive or legislative act or judicial decision." *Garcia–Mir v. Meese,* 788 F.2d 1446, 1453 (11th Cir.1986) (quotation omitted); *see also Committee of U.S. Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 939 (D.C.Cir.1988). The Attorney General has clearly made an executive decision that Petitioner's detention is permissible and, as the Court has already noted, acts of Congress and previous judicial decisions demonstrate that the other branches of government concur. *See Alvarez–Mendez v. Stock,* 941 F.2d at 963; *Garcia–Mir,* 788 F.2d at 1454–55. Therefore, the Court does not engage in the irrelevant inquiry into whether Petitioner's confinement violates customary international law, finding that, even if it did, Petitioner would still not be entitled to a writ of habeas corpus.

### *Conclusion.*

For the reasons stated, the Court DENIES the Petition and DISMISSES the matter. In the event that Petitioner chooses to appeal the disposition of his petition, the Court finds that such appeal is taken in good faith and that Petitioner should be permitted to proceed in forma pauperis.