Harpal SINGH, Petitioner—Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent—Appellee.

No. 01–15409.

D.C. No. CV–00–02923–CRB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Decided May 6, 2002.

470

Before HUG, D.W. NELSON, and HAWKINS, Circuit Judges.

## MEMORANDUM *

Harpal Singh, a native of India, appeals the district court's dismissal of his habeas petition, challenging the INS' discretionary decision to deny parole. The INS arrested Singh in 1997, and he is still in custody. Singh alleges that he was arrested and tortured numerous times by the Indian security forces because he is an outspoken advocate for the establishment of an independent Sikh state. An immigration judge granted Singh deferral of removal under the Torture Convention. The immigration judge's decision is currently before the BIA on cross-appeals. We have jurisdiction over Singh's habeas

petition pursuant to 28 U.S.C. §§ 1291, 2253. We affirm. Because the parties are familiar with the factual and procedural history of this case, we do not recount it here except as necessary to explain our decision.

This Court reviews the District Court's decision to grant or deny a petition for habeas corpus de novo. *Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988).

Singh raises two issues on appeal. The first issue being whether it is unconstitutional for the INS to serve both an adjudicatory and prosecutorial role in Singh's deportation proceedings. The second issue, according to Singh, is whether "excludable aliens ... have a due process right to fundamentally fair procedures for adjudicating their non-discretionary applications for relief from removal." The non-discretionary relief that Singh refers to is the withholding statute and the Convention Against Torture ("CAT"). Singh alleges that the INS is using its detention authority to coerce him into relinquishing his rights under these two provisions.

## I. INS Jurisdiction over Parole Decisions

■ Singh argues that the adjudication of his parole request was tainted by institutional bias because the ADD's adjudication of this request created an inherent conflict with the Service's investigation and prosecution of his case, created potential for abuse and violated due process. Singh's argument is without merit.

In *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), the Supreme Court rejected an argument that a deportation hearing violated due process because the special inquiry officer adjudicating the hearing was an employee of and

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

subject to the supervision and control of the INS, which is charged with investigative and prosecuting functions. This Court likewise rejected an almost identical institutional bias/due process challenge in *United States v. Garcia–Martinez,* 228 F.3d 956 (9th Cir.2000), in which an alien had argued that his removal proceedings could not be used as an element of the offense of illegal re-entry because his removal proceeding had been conducted by an INS adjudicator who was inherently biased due to his daily enforcement activities. *Id.* at 960.

## II. INS Coercion

Somewhat tellingly, Singh offers no evidence of INS coercion. Instead, he asks for limited discovery so as to "prove that Respondents' decisions to revoke his parole and deny his subsequent parole request were the result of improper consultations with INS District Counsel, and that those decisions were made in an effort to coerce Mr. Singh into relinquishing his rights under the withholding statute and the CAT." Again, this contention is without merit.

In *Alvarez–Mendez v. Stock,* 941 F.2d 956 (9th Cir.1991), this Court has applied Supreme Court precedent to reject any argument that an excludable alien has a constitutional right to challenge his detention. In *Alvarez–Mendez,* the Court held that "[p]arole decisions are an integral part of the admissions process and excludable aliens cannot challenge such decisions as a matter of constitutional right." *Id.* at 963; *Accord Cuban American Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412, 1427–28 (11th Cir.1995) ("Aliens may be excluded or denied parole on grounds that might be suspect in the context of domestic legisla-

tion, because there are apparently no limitations on the power of the federal government to determine what classes of aliens will be permitted to enter the United States or what procedures will be used to determine their admissibility") (internal quotation marks omitted).

The key here is that Singh is an excludable alien. As this Court has held:

> Although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissability, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.... Because excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows.

*Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1450 (9th Cir.1995).

Singh arrived from India on May 4, 1993, and attempted to enter the country without the necessary documents for legal admission. The Service detained Singh and immediately initiated exclusion proceedings, charging Singh with being excludable under INA §§ 212(a)(7)(A)(i)(I) and (B)(i)(I) as an alien not in possession of valid travel or entry documents. Singh was paroled[1] into the United States until November 3, 1997, when Singh was placed in INS detention.

Thus, Singh's due process claim and any other constitutional arguments he makes fail to state a claim for which the district court could have granted relief.

*Luk v. Rosenberg,* 409 F.2d 555, 558 (9th Cir.1969); *Yuen Sang Low v. Attorney General of U.S.,* 479 F.2d 820, 822–23 (9th Cir.1973).

---

1. Being paroled is still insufficient to provide an excludable alien with due process protections over his/her detention. *See Siu Fung*

### III. Time in Detention

As part of his coercion claim, Singh points to the amount of time he has spent in INS detention. Indeed, Singh has been in INS detention for over four years.

■ However, as to excludable aliens like Mr. Singh, this Court has ruled that "applicable Supreme Court precedent squarely precludes a conclusion that they have a constitutional right to be free from detention, even for an extended time." *Barrera–Echavarria*, 44 F.3d at 1449; *See also Clark v. Smith*, 967 F.2d 1329, 1332 (9th Cir.1992) ("[Petitioner] has been held in 'jail-like' conditions for over a year and may be conceivably held in this way for over another year while proceedings go on before the [BIA] and this court. [Petitioner's] argument, which is not without force, is addressed on this appeal to those who, by their role, cannot respond to it as long as the detention may still be described as 'temporary.'")

Even in the case of an alien who has effectuated an entry in to the United States, and therefore is afforded greater constitutional protections, prolonged detention is only unlawful if there is not a "significant likelihood of removal in the reasonably foreseeable future." *Ma v. Ashcroft*, 257 F.3d 1095, 1098 (9th Cir. 2001) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)). Again, Singh has not "entered" and is therefore not even entitled to this protection.[2]

Accordingly, for the foregoing reasons the decision of the district court is AFFIRMED.

---

2. We also note that, unlike the aliens in *Zadvydas*, Singh is not facing indefinite detention. Although the delay is unfortunate, Singh is

D.W. NELSON, J., concurring.

The majority's opinion concludes that Harpal Singh is an excludable alien and is therefore unentitled to the protection of the Fifth Amendment's Due Process Clause. While I concur in the result the majority reaches, I write separately to highlight exactly why the Due Process Clause is not in play.

The Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), is the key to understanding why Singh cannot resort to due process protections. In *Zadvydas*, the Court was confronted with the government's argument that the due process clause does not prohibit indefinite detention of aliens because of their status *qua* aliens. *Id.* at 692. In particular, the government pointed the Court to a 1953 Supreme Court case, holding that due process protections did not apply to an alien who was refused admission to the United States and detained indefinitely at Ellis Island. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215–16, 73 S.Ct. 625, 97 L.Ed. 956 (1953).

The majority in *Zadvydas*, however, rejected this argument and found *Mezei* distinguishable. Justice Breyer, writing for the majority, explained that there is a world of difference between an alien who has "effected an entry" into the United States and an alien who has never entered. *Zadvydas*, 533 U.S. at 693. More specifically, Justice Breyer reasoned that Mezei never really "entered" the United States. Mezei was temporarily excluded at the border, but allowed to proceed to Ellis Island pending the ultimate resolution of his passport difficulties. *Mezei*, 345 U.S. at 208. As Justice Breyer explains, this does not count as an entry because despite

---

merely being detained pending the BIA's decision.

Mezei's physical presence on Ellis Island, the constitution views him as having been stopped at the border. *Zadvydas*, 533 U.S. at 693. And because Mezei never entered the United States, the Fifth Amendment's guarantee of due process never attached.

In contrast, *Zadvydas* says something very different about whether due process protections apply to those aliens who have entered the United States. In broad— indeed grandiose—language, the majority states the following:

> But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, *whether their presence here is lawful, unlawful, temporary, or permanent.*

*Id.* (emphasis added). There is only one way that this language can be reconciled with the Court's earlier discussion of *Mezei.* If an alien is stopped at the border and told he or she is excludable, but nevertheless permitted to enter pending a final determination, that alien is not entitled to the protections of the due process clause. However, if an alien is admitted to the U.S. or otherwise finds his or her way into the country (even if by illicit means), he or she is entitled to the Constitution's guarantee of due process of law. *Mezei*, 345 U.S. at 212 ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

Singh, therefore, cannot invoke the Due Process clause because he is an alien of the first type: he concedes in his brief that he and his wife "were briefly detained [at the border], and then paroled into the United States." Had Singh entered the United States, either with the blessing of U.S. Customs agents or even without their knowledge, he would have been entitled to the protections of the Due Process Clause, and the result here might have been different. But Singh was stopped at the border, and that makes all the difference. *Zadvydas*, 533 U.S. at 693. That is why due process protections do not apply. That is also why I conclude, as the majority does, that the district court's decision has to be affirmed.

HAWKINS, Circuit Judge, Dissenting.

This is a difficult case with hard consequences. A man, grievously, repeatedly, and unspeakably tortured in his native country on account of his political opinion, now sits indefinitely in an American detention facility. And simply because he did not further risk the life and limb of his family and himself by sneaking into the United States through more adventuresome means, he is likely to spend the duration of his existence under INS detention because he is not a "person" entitled to rudimentary due process under the majority's reading of the law. I fault my colleagues not—for the law is harsh, but not as harsh as they read it.

Mr. Singh *is* a person. And the majority is wrong to hew so closely to the language of cases in which excludable aliens have only those due process rights that Congress is prepared to grant them. The cases relied upon by the majority address excludable aliens subject to discretionary relief from the Attorney General. The United States, through its treaty obligations and its own sovereign laws, has distinguished that kind of relief from cases requiring mandatory relief. The relief Mr. Singh claims is mandatory. Because Mr. Singh fits into a different class of excludable aliens, his allegations ought to be entitled to more than cursory treatment; otherwise, we sit idly while he endures what

the district court, below, termed an outrageous nightmare of a situation.

The main issue in this case is not Mr. Singh's challenge of the discretionary decision to deny parole, but rather whether the INS's detention authority can constitutionally be used to bolster its litigation strategy against an excludable alien with claims for, inter alia, non-discretionary relief under the Convention Against Torture. Here, Mr. Singh makes specific allegations that the INS attorneys working on his case to exclude him "were actually involved in the decision to deny his request for parole and that those attorneys opposed Mr. Singh's parole request in an effort to preserve or bolster their litigation position." Hence, Mr. Singh is not challenging "the inherent conflict" of the INS's prosecutory role in exclusion proceedings and its decision to deny parole. Rather, Mr. Singh is seeking limited discovery to help establish proof of an actual conflict of interest because the institutional screen between prosecution and adjudication was taken down.

It is this specific, concrete instance of conflict, rather than an abstract institutional claim, that Mr. Singh is making; and it is this difference that renders *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), inapposite. Because of the specificity of the allegation, my view is that it would be better to remand and allow some discovery.

Of course, to make that judgment Mr. Singh must be entitled to "some" due process protection. The government and the majority say he is not. The case law is not so univocal. Judge Nelson's concurrence correctly relies upon *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), to point out that excludable aliens cannot challenge their detention

pending deportation, but that case addressed resident aliens without claims to non-discretionary relief. Aliens who indeed have claims of non-discretionary relief are situated differently, and thus afforded greater protection. *See Augustin v. Sava*, 735 F.2d 32 (2d Cir.1984):

> [D]espite the unavailability of due process protections in most exclusion proceedings ... it appears likely that some due process protection surrounds the determination of whether an [excludable] alien has sufficiently shown that return to a particular country will jeopardize his life or freedom so as to invoke the mandatory prohibition against his return to that country.

*Id.* at 37.

There are other cases that clearly articulate the constitutional rights afforded excludable aliens. These are cited in *Zadvydas* and in our en banc decision in *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1449 (9th Cir.1995). *Barrera–Echavarria* held that because excludable aliens "have no procedural due process rights in the admissions process," an excludable alien's detention pending deportation was constitutional even if for an indefinite period of time. *Id.* at 1449–50. It is worth noting, however, that the petitioners in *Barrera–Echavarria* and *Zadvydas* were convicted felons; additionally, neither had been granted withholding of deportation or relief under the Convention Against Torture. Moreover, *Zadvydas* and *Barrera–Echavarria* recognized the array of constitutional rights enjoyed by excludable aliens, rights not articulated by Congress. Indeed, what's odd about *Barrera–Echavarria* is that it mistakenly characterized the rights afforded excludable aliens as "substantive" or "nonprocedural," [1] even though two of the cases the

---

1. Another case noted that although excluda-

ble aliens may be detained pending their de-

*Barrera–Echavarria* court cited specifically refer to procedural rights: *e.g., Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (excludable aliens may not be punished at hard labor without due process); *United States v. Henry,* 604 F.2d 908, 914 (5th Cir.1979) (excludable aliens entitled to *Miranda* warnings).

Similarly, it is no adequate support to the majority's position to point to cases that hold that Congress has "plenary power" to create immigration law, and that the judicial branch must defer to executive and legislative branch decisionmaking in that area. Justice Breyer's majority decision in *Zadvydas* addressed the scope of that plenary power. He said: "[T]hat power is subject to important constitutional limitations. *See INS v. Chadha,* 462 U.S. 919, 941–42, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (Congress must choose a 'constitutionally permissible means of implementing' that power); *The Chinese Exclusion Case,* 130 U.S. 581, 604, 9 S.Ct. 623, 32 L.Ed. 1068 (1889) (congressional authority limited 'by the Constitution itself and considerations of public policy and justice which control, more or less, the conduct of all civilized nations')." *Zadvydas,* 533 U.S. at 695. Justice Scalia's dissent in *Zadvydas* also says that aliens subject to a final order of deportation—or to use the language of *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 213, 73 S.Ct. 625, 97 L.Ed. 956 (1953), an "alien on the threshold of initial entry"—enjoy at least some due process protections not explicitly articulated by Congress. *See Zadvydas,* 533 U.S. at 704 ("I am sure they cannot be tortured as well"). In other words, the statement of law in *Mezei, i.e.,* that "[w]hatever the procedure authorized by

Congress is, it is due process as far as an alien denied entry is concerned," is poorly phrased and in contradiction to precedent both before *Mezei* and since.

Equally important to this point is language proscribing unwarranted civil commitment from the Supreme Court. The Court has clearly stated "that civil commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (emphasis added). It has also said that detention constitutes punishment if the detention appears "excessive" in relation to any alternative purpose. *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Foucha v. Louisiana,* 504 U.S. 71, 77–78, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (detention cannot constitutionally continue when initial basis for commitment no longer exists). Since Mr. Singh cannot be repatriated, the detention is probably excessive because there is likely no alternative purpose. He is not a criminal nor is he a threat to our national security.

To be sure, the cases in the paragraph above are not immigration cases, but that does not mean their statements of principle do not apply. Indeed, they are especially relevant here because all the Supreme Court and the Ninth Circuit cases cited by the majority can be distinguished, as none of them offers directly contrary precedent that dictates that excludable aliens with a right to non-discretionary relief are to be treated merely with "whatever due process rights" Congress affords them.

---

portation, they possess Fifth and Fourteenth Amendment rights to be free of "gross physical abuse at the hands of state or federal officials." *Lynch v. Cannatella,* 810 F.2d

1363, 1373–74 (5th Cir.1987). The ascription of these due process rights remains good law despite the fact that Congress never granted these rights specifically to excludable aliens.

Because Mr. Singh cannot be deported under the non-discretionary relief statutes, and because he makes a strong claim that the INS has unfairly used its detention capability to bolster its litigation position before the BIA, Mr. Singh should not be forced to endure the Hobson's choice between being jailed and/or tortured in India and being "detained" indefinitely and unconstitutionally in the United States. We should remand with an order for limited discovery to assure that there was no improper interference in Mr. Singh's parole request.

I should add that although Mr. Singh deserves some relief, as suggested above, I am aware of the need to keep my proposed (and rejected) holding narrow. A narrow holding is desirable for the reason alluded to in a dissent in a Sixth Circuit case, *Rosales–Garcia v. Holland,* 238 F.3d 704, 731 n. 7 (6th Cir.2001), that was recently vacated by the Supreme Court and remanded in light of *Zadvydas v. Davis.* In *Rosales–Garcia,* Judge Rice said:

> Although the entry fiction [which treats a petitioner as if he is being detained at the border, despite his physical presence in the United States] may appear to be draconian in operation, it has a humanitarian purpose. The entry fiction is a compassionate response to the hardships that surely would have befallen Rosales if INS representatives had prevented him and other Mariel Cubans from bringing their boats ashore, as the government unquestionably had the right to do. In other words, the United States lawfully could have forced Rosales and the other Mariel Cubans to remain at sea, where they almost certainly would have died from drowning, dehydration or starvation. Instead, the government

allowed Rosales and the others to come ashore, under the entry fiction, which treats the Mariel Cubans as if they are still at sea, and outside of U.S. territory, for immigration purposes.

*Id.* I agree: the entry fiction is a necessary one. Without it, agents of the executive branch would be tempted, to avoid the imposition of increased administrative burdens, to keep the huddled masses at bay to face their peril. But it surely does not follow from that necessity that we must deny entirely the basic principles of fair play and honest dealing to those who do fall in our custody. I respectfully dissent.