**Alberto GARCIA–ACOSTA, Petitioner,**

v.

**Joe YOUNG, et al., Respondents.**

**No. 01–2719–D/V.**

United States District Court,
W.D. Tennessee,
Western Division.

March 24, 2003.

Garcia Acosta, FCI–Memphis, Memphis, Pro se.

William W. Siler, Esq., U.S. Attorney's Office, Harris Lee Leatherwood, Immigration and Naturalization Service, Litigation Unit, Memphis, Joseph A. Aguilar, Immigration and Naturalization Service, New Orleans District–INS, New Orleans, LA, for Joe P. Young, Warden, John Ashcroft, Immigration and Naturalization Service, respondents.

ORDER OF DISMISSAL AND ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

DONALD, District Judge.

Alberto Garcia–Acosta, a native and citizen of Cuba who arrived in this country in 1980 in the Mariel boatlift, filed a petition pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus ordering his release from federal custody.

Petitioner came to this country from Cuba as part of the Mariel boatlift in 1980. Upon his arrival, he admitted that, prior to his arrival, he had been arrested in Cuba for fighting and being a "dangerous person," in 1976 and 1978, respectively. While serving a two-year sentence in prison for the later offense, he was taken from prison and placed on a boat to the United States in 1980.

Petitioner applied for asylum in June of 1980. In July of 1980, petitioner was paroled to a sponsor in Miami, Florida. Thereafter, Hernandez acquired an extensive criminal record including: a conviction in 1981 for attempt to commit murder in the second degree, a conviction in 1988 for burglary of a conveyance, and a conviction in 1989 for two counts of battery on a law enforcement officer.

In July of 1989, the Immigration and Naturalization Service (INS) revoked petitioner's immigration parole, and placed him in proceedings before an Immigration Judge. On May 4, 1990, an Immigration Judge found the petitioner excludable for his convictions and lack of entry documents, denied his application for asylum, and ordered him excluded and deported from the United States. Petitioner waived his right to appeal that order at the conclusion of the proceedings. Petitioner was returned to INS custody at the time his immigration parole was revoked and remains detained at FCI Memphis.

[redacted] Petitioner does not contest the determination of the Attorney General that he is an excludable alien. Ordinarily, the Attorney General may detain excludable aliens prior to deporting them to their country of origin or another state willing to accept them. Cuba, however, has been largely unwilling to accept back the members of the Mariel boatlift; other states have been similarly unwilling to accept these people. Thus, petitioner asserts that, as he is confined indefinitely in a federal prison pursuant to the judgment of no court and without any reasonable prospect of a change in his situation, due process requires that he be released.

Pursuant to the Cuban Review Plan, petitioner's case is reviewed at least annually to determine his suitability for immigration parole. The review is conducted by a Cuban Review Panel, which makes a recommendation to the INS's Associate Commissioner of Enforcement. 8 C.F.R. § 212.12(d). In order to recommend a detainee's release on parole, a majority of the panel must conclude that

(i) The detainee is presently a nonviolent person;

(ii) The detainee is likely to remain nonviolent;

(iii) The detainee is not likely to pose a threat to the community following his release; and

(iv) The detainee is not likely to violate the conditions of his parole.

8 C.F.R. § 212.12(d)(2). In making that determination, the panel is required to weigh the following factors:

(i) The nature and number of disciplinary infractions or incident reports received while in custody;

(ii) The detainee's past history of criminal behavior;

(iii) Any psychiatric and psychological reports pertaining to the detainee's mental health;

(iv) Institutional progress relating to participation in work, educational and vocational programs;

(v) His ties to the United States, such as the number of close relatives residing lawfully here;

(vi) The likelihood that he may abscond, such as from any sponsorship program; and

(vii) Any other information which is probative of whether the detainee is likely to adjust to life in a community, is likely to engage in future acts of violence, is likely to engage in future criminal activity, or is likely to violate the conditions of his parole.

*Id.*, § 212.12(d)(3). Moreover, "[n]o detainee may be released on parole until suitable sponsorship or placement has been found for the detainee," *id.*, § 212.12(f), which may include placement in a halfway house or with a close relative.

During the time petitioner has been in INS custody, he has been considered for parole on multiple occasions. The INS has denied him parole each time, most recently on April 9, 2001, because petitioner refused to be interviewed by the Review Panel. Earlier denials were based upon petitioner's propensity to engage in assaultive criminal behavior and recidivist tendencies.

As petitioner is subjected to detention of an indefinite duration, his situation is very similar to that of the petitioner in *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). When Mezei arrived at Ellis Island in New York Harbor, the Attorney General excluded him from this country. He tried to take ship to France and Great Britain, but neither of those countries were willing to take him in. Finding himself stranded on Ellis Island, he filed a petition for a writ of habeas corpus. *See id.* at 208–09, 73 S.Ct. 625.

The Supreme Court held that, for purposes of assessing the constitutionality of Mezei's detention, he should be treated as if outside the borders of the United States. *See id.* at 215, 73 S.Ct. 625. The Court noted that Congress might have refused Mezei permission to land on Ellis Island until the Attorney General determined whether to admit him and that its act of "legislative grace," permitting him to come ashore, "bestows no additional rights." *Id.* The Court concluded that Mezei's indefinite detention deprived him of no statutory or constitutional right. *See id.* The Court also noted that the due process rights of an excluded alien are extremely low. *See id.* at 212, 73 S.Ct. 625 (" 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.' " (quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950))).

◼ This Court is unable to discern a relevant difference between the situation of Mezei and the petitioner at bar. Like Mezei, the United States permitted members of the Mariel boatlift to come ashore, rather than remain adrift at sea, before determining their eligibility to remain in this country. The Attorney General later gave many, including petitioner, the opportunity to live in the country outside of federal detention. A grant of parole does not affect the alien's status as excludable

and the Attorney General may revoke parole when he determines that its purposes have been served. The fact that the United States has retracted this privilege in light of petitioner's criminal conduct does not raise his continued detention to a constitutional issue.

■ The converse of this broad authority to deal with excludable aliens is the authority to refuse to parole an excludable alien as well as the authority to rescind parole in light of criminal behavior. *See Guzman v. Tippy,* 130 F.3d 64, 66 (2d Cir.1997); *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1446 (9th Cir.1995). Although Congress requires the Attorney General to remove aliens within ninety days in most circumstances, it has explicitly granted him the authority to retain an inadmissible alien in custody beyond this period. *See* 8 U.S.C. § 1231(a)(6). The Attorney General therefore has the authority to indefinitely detain an excludable alien. Additionally, there is no indication that the Attorney General has not scrupulously followed the procedures authorized by Congress throughout the term of petitioner's stay in this country.

More recently, in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Supreme Court examined the constitutionality of prolonged detention of resident aliens who had been found to be unlawfully present in the United States and who were being detained pending removal pursuant to 8 U.S.C. § 1231(a)(6). The Supreme Court held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," 522 U.S. at 690, 118 S.Ct. 948, and that, "if removal is not reasonably foresee-able, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700, 118 S.Ct. 948. In so holding, the Supreme Court distinguished its previous decision in *Mezei* on the basis that the petitioners in *Zadvydas,* unlike those in *Mezei,* had been lawfully admitted to the United States:

> Although *Mezei,* like the present cases, involves indefinite detention, it differs from the present cases in a critical respect. As the Court emphasized, the alien's extended departure from the United States [in *Mezei* ] required him to seek entry into this country once again. His presence on Ellis Island did not count as entry into the United States. Hence, he was "treated," for constitutional purposes, "if it stopped at the border." ... And that made all the difference.
>
> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.... It is well settled that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders..... But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

533 U.S. at 693, 121 S.Ct. 2491 (citations omitted).[1]

The vast majority of courts that have considered the issue since the Supreme

---

1. In the quoted passage, the Supreme Court cited, *inter alia,* its previous decisions in *Kaplan v. Tod,* 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585 (1925), which held that an alien who was held on Ellis Island and, thereafter, with her father in the United States pending execution of a removal order, had never entered the United States, and in *Leng May Ma v. Barber,* 357 U.S. 185, 188–90, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958), which held that an alien paroled into the United States pending admissibility had not effected an "entry."

Court's decision in *Zadvydas* have held, on the basis of *Mezei*, that the Mariel Cubans never entered the United States and, therefore, their continued detention does not violate the Due Process Clause. *See Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir.2001) (*per curiam* ); *Sierra v. Immigration & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir.), *cert. denied*, 534 U.S. 1071, 122 S.Ct. 676, 151 L.Ed.2d 589 (2001); *Rollaro–Suarez v. Pratt*, No. 3–01–CV–1419–G, 2001 WL 1512026 (N.D.Tex. Nov.21, 2001); *Damas–Garcia v. United States*, No. CIV. A. 01–716 JBS, 2001 WL 1231480, at *4 (D.N.J. Oct.17, 2001); *Beltran–Leonard v. Immigration & Naturalization Serv.*, No. 3–00–CV–2142–G, 2001 WL 1112552 (N.D.Tex. Sept.7, 2001); *Hernandez Nodarse v. United States*, 166 F.Supp.2d 538 (S.D.Tex.2001); *Fernandez–Fajardo v. Immigration & Naturalization Serv.*, 193 F.Supp.2d 877 (M.D.La.2001); *cf. Singh v. Immigration & Naturalization Serv.*, 35 Fed.Appx. 469 (9th Cir.2002) (dismissing habeas petition by native of India who has been in INS detention for four years while awaiting a decision on his appeal of a deportation decision because the petitioner, an excludable alien, had not "entered" the United States); *Ma v. Ashcroft*, 257 F.3d 1095, 1106–07 (9th Cir.2001) (distinguishing excludable aliens from aliens who entered the United States). Furthermore, one day after the Supreme Court issued its decision in *Zadvydas*, it denied certiorari in a case in which the Fifth Circuit rejected a Mariel Cuban's constitutional challenge to his prolonged detention. *Mendivia v. United States*, No. 99–41195, 2000 WL 329107 (5th Cir. Mar. 16, 2000) (*per curiam* ), *cert. denied*, 533 U.S. 949, 121 S.Ct. 2590, 150 L.Ed.2d 749 (2001); *see* G. Br. at 13 n. 10.[2]

Although a divided Sixth Circuit panel reached a contrary conclusion in *Rosales–Garcia v. Holland*, 238 F.3d 704, 720–21 (2001), several months before the Supreme Court's decision in *Zadvydas*, by attempting to distinguish *Mezei* on the basis that it involved a national emergency, the Supreme Court granted certiorari, vacated the judgment, and remanded the case to the Sixth Circuit for reconsideration in light of *Zadvydas*. Accordingly, the opinion in *Rosales–Garcia* has no precedential value. Moreover, the panel's attempt to limit *Mezei* to its historical context cannot be reconciled with the Supreme Court's decision in *Zadvydas*, which, as previously noted, reaffirmed *Mezei*.[3]

**2.** The Fifth Circuit's unpublished decision in *Mendivia* is available on that court's intranet website.

**3.** As the dissent noted, the Supreme Court did not base its holding on *Mezei* on national security concerns:

[T]he *Mezei* Court did not cite the Korean War and national security concerns as the impetus behind its determination that Mezei's confinement violated no constitutionally protected right. In other words, the Court *did not* suggest that Mezei *would* have had a constitutionally protected liberty interest in freedom from bodily restraint but for the conflict in Korea. To the contrary, the Court found no due process violation because Mezei, as an alien seeking initial entry, had no constitutional right to enter the United States at all.... Absent a constitutional right to enter this country, Mezei simply had no liberty interest in being free from indefinite detention to effect his exclusion. The "exigencies" associated with the Korean War were not crucial to the Court's resolution of this constitutional issue. Rather, those national security concerns merely explained why the Attorney General had exercised his statutory authority to exclude and to detain Mezei. Notably, a number of other circuit courts have also read *Mezei* as standing for the proposition that an excludable alien has no liberty interest in freedom from indefinite immigration detention.

*Rosales–Garcia* 238 F.3d at 733–34 (emphasis in original; citations and footnotes omitted).

Finally, prior to the decision in *Rosales–Garcia,* other Sixth Circuit panels have declined to afford relief to Mariel Cubans who have filed petitions challenging their indefinite detention. *Garcia–Arena v. Luttrell,* No. 99–6505, 2000 WL 1827855, at *1 (6th Cir. Dec.8, 2000) ("The federal courts of appeals consistently hold that the Immigration and Nationality Act authorizes the Attorney General to detain excludable Mariel Cubans pending their repatriations, even though chances of repatriation are slim."); *Betancourt v. Chandler,* No. 99–5797, 2000 WL 1359634 (6th Cir. Sept.14, 2000); *Fernandez–Santana v. Chandler,* No. 98–6453, 1999 WL 1281781 (6th Cir. Dec.27, 1999); *Gonzalez v. Luttrell,* No. 96–5098, 1996 WL 627717, at *1 (6th Cir. Oct.29, 1996) ("Continuing federal custody of Mariel Cubans ... is within statutory authority and does not violate constitutional protections."); *accord Fernandez Luiz v. Luttrell,* 46 F.Supp.2d 754 (W.D.Tenn.1999). Although the Sixth Circuit itself is not bound by these unpublished panel decisions, *Rosales–Garcia,* 238 F.3d at 715 n. 16; *see* 6 Cir. R. 206(c), this Court is required to accord such opinions precedential value, *see* 6 Cir. R. 28(g).

For all the foregoing reasons, then, the Court concludes that, because Garcia–Acosta is an excludable alien who has not entered the United States, his continued detention does not violate the Fifth Amendment.

 Broadly construed, Garcia–Acosta's petition may also assert a claim challenging the decision of the Cuban Review Panel to deny him parole. However, decisions concerning the granting and revocation of immigration parole are within the discretion of the Attorney General, who has delegated his authority to the INS's Associate Commissioner for Enforcement. The Attorney General's "decision may not be challenged on the grounds that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors relevant to the risk of abscondence and too little to others." *Bertrand v. Sava,* 684 F.2d 204, 212 (2d Cir.1982); *see also Immigration & Naturalization Serv. v. Rios–Pineda,* 471 U.S. 444, 451–52, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985) (review of a discretionary decision by the Attorney General; "This case, therefore, does not involve the unreasoned or arbitrary exercise of discretion.... In this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates *de novo* appellate review."). Instead, "[t]he burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole." *Bertrand,* 684 F.2d at 213. Under these circumstances, "habeas review is limited to determining whether INS officials 'have articulated *some* individualized facially legitimate and bona fide reason for denying parole, and *some* factual basis for that decision in each individual case.'" *Sierra,* 258 F.3d at 1219 (emphasis in original; citation omitted); *see also Marczak v. Greene,* 971 F.2d 510, 518 (10th Cir. 1992); *Garcia–Mir v. Smith,* 766 F.2d 1478, 1485 (11th Cir.1985).

In this case, Garcia–Acosta's request for parole has been afforded individualized consideration by the Cuban Review Panel which, citing his criminal history and more recently, his refusal to be interviewed, concluded that "it is NOT clearly evident that you are unlikely to remain nonviolent and/or unlikely to pose a threat to the community were a more favorable decision to have been rendered in your behalf. G. Ex. 7. The cited reasons are among the criteria specified in the Cuban Review Plan, *see supra* p. 807, and the accompany-

ing documentation, which was considered by the Panel, provides evidentiary support for that decision. Under these circumstances, Garcia–Acosta has not satisfied his burden of demonstrating that the Attorney General failed to exercise his discretion or that his exercise of discretion was in bad faith or irrational.

For all the foregoing reasons, the Court DENIES the petition in its entirety.

■ For the reasons stated, the Court denies and dismisses the petition. Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063 (6th Cir.1997). Section 2253 does not apply to habeas petitions by federal prisoners under § 2241. *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 810 (10th Cir.1997); *Ojo v. I.N.S.*, 106 F.3d 680, 681–82 (5th Cir.1997); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996). Nevertheless, a habeas petitioner seeking to appeal is still obligated to pay the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917.[4] Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915, it is unclear how habeas petitioners establish a right to proceed *in forma pauperis* and avoid this filing fee.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether these requirements apply to § 2241 cases. *Kincade v. Sparkman*, 117 F.3d 949, 951–52

(6th Cir.1997). *Cf. McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir.1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

■ The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. *See McIntosh*, 115 F.3d at 810; *United States v. Simmonds*, 111 F.3d 737, 743 (10th Cir.1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. *Graham v. U.S. Parole Com'n*, No. 96–6725, 1997 WL 778515 (6th Cir. Dec.8, 1997), aff'g, *Graham v. United States*, No. 96–3251–Tu (W.D.Tenn. Dec. 4, 1996). Because the Court finds the reasoning of *McIntosh* persuasive, and because the Court finds that this conclusion naturally follows from the Sixth Circuit's decision in *Kincade*, the Court concludes that the PLRA does not apply to § 2241 petitions.

Pursuant to *Kincade*, a petitioner must seek leave to proceed *in forma pauperis* from the district court under Fed. R.App. 24(a), which provides:

A party to an action in a district court who desires to proceed on appeal *in forma pauperis* shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement

---

4. The fee for docketing an appeal is $100. *See* Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or

upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith, and to deny the certificate if the appeal would be frivolous.

The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* The same considerations that lead the Court to dismiss this petition as devoid of merit also compel the conclusion that an appeal would be frivolous. It is therefore certified, pursuant to F.R.A.P. 24(a), that any appeal in this matter by petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis.*